## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **DAVOL, INC.,** | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **C.A. No. 12-958-GMS** |
| | ) |
| **ATRIUM MEDICAL CORPORATION,** | ) **JURY TRIAL DEMANDED** |
| | ) |
| **Defendant.** | ) |
| | ) |

---

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION TO STAY LITIGATION PENDING
## *INTER PARTES* REVIEW OF TWO OF THE THREE PATENTS-IN-SUIT

OF COUNSEL:

Wayne L. Stoner
Gregory P. Teran
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
wayne.stoner@wilmerhale.com
gregory.teran@wilmerhale.com

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Travis S. Hunter (#5350)
One Rodney Square
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
hunter@rlf.com

*Attorneys for Defendant*
*Atrium Medical Corporation*

Dated: March 18, 2013

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS & FACTUAL BACKGROUND ......................... 2

SUMMARY OF ARGUMENT ....................................................................................... 5

ARGUMENT ............................................................................................................... 6

      A.     The Relevant Factors All Weigh in Favor of Staying This Case ............................ 6

            1.     A Stay of This Action Will Not Unduly Prejudice or Create a Clear Tactical Disadvantage to Davol. ........................................ 6

            2.     A Stay Will Simplify the Issues and Promote Judicial Economy ............... 9

            3.     The Early Stage of This Case Strongly Favors a Stay. ............................. 14

      B.     The Court Should Exercise Its Discretion to Stay This Case Pending Inter Partes Review .............................................................................. 15

CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Abbott Diabetes Care, Inc. v. DexCom, Inc.,*
No. 05-590-GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006)................................................9

*Abbott Diabetes Care, Inc. v. DexCom, Inc.,*
No. 06-514-GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007) ("DexCom II") ...............6, 12

*Akeena Solar Inc. v. Zep Solar Inc.,*
No. C09-05040 JSW, 2011 WL 2669453 (N.D. Cal. July 7, 2011) .......................................12

*Alloc, Inc. v. Unilin Décor N.V.,*
No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) ..................................8, 13, 14

*ASCII Corp. v. STD Entm't USA, Inc.,*
844 F. Supp. 1378 (N.D. Cal. 1994) ....................................................................................13

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.,*
No. 06-187-GMS, 2009 WL 2969566 (D. Del. Sept. 15, 2009)..............................................14

*Bd. of Trustees of the Univ. of Ill. v. Micron Tech., Inc.,*
No. 11-2288-SLD-JAG, Text Order (C.D. Ill. Aug. 24, 2012) .............................8, 14, 15, 16

*Canady v. Erbe Elektromedizin GmbH,*
271 F. Supp. 2d 64 (D.D.C. 2002) ......................................................................................13

*Clearlamp, LLC v. LKQ Corp.,*
No. 12-2533, Dkt. No. 43 (Minute Entry) (N.D. Ill. Oct. 18, 2012) .............................*passim*

*EchoStar Techs. Corp v. TiVo, Inc.,*
No. 5:05-CV-81-DF, 2006 WL 2501494 (E.D. Tex. July 14, 2006)................................10, 11

*Ethicon, Inc. v. Quigg,*
849 F.2d 1422 (Fed. Cir. 1988)....................................................................................11, 13, 15

*Graham v. John Deere Co. of Kansas City,*
383 U.S. 1 (1966).................................................................................................................12

*High Tech. Med. Instrumentation, Inc. v. New Image Indus., Inc.,*
49 F.3d 1551 (Fed. Cir. 1995)................................................................................................9

*IMX, Inc. v. LendingTree, LLC,*
469 F. Supp. 2d 203 (D. Del. 2007)........................................................................................9

*Inteplast Grp., Ltd. v. Coroplast, Inc.,*
No. 4:08-CV-1413 CAS, 2009 WL 1774313 (E.D. Mo. June 23, 2009) .................................8

*Microsoft Corp. v. i4i Ltd. Partnership,*
    131 S. Ct. 2238 (2011) ...................................................................................................12

*Network-1 Security Solutions, Inc. v. Alcatel-Lucent USA Inc.,*
    No. 11-492-LED-JDL, Dkt. No. 410 (Order) (E.D. Tex. Mar. 5, 2013) ..................................15

*Patlex Corp. v. Mossinghoff,*
    758 F.2d 594 (Fed. Cir. 1985), *rev'd in part on other grounds*, 771 F.2d 480 (Fed.
    Cir. 1985) ...........................................................................................................................9

*Pegasus Development Corp. v. DirecTV, Inc.,*
    No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) ...............................13, 14

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC,*
    No. 5:12–3864–EJD, 2012 WL 6020012 (N.D. Cal. Dec. 3, 2012) ................................10, 15

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.,*
    No. SACV 12-21-JST, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ............................ *passim*

*Textron Innovations Inc. v. Toro Co.,*
    No. 05-486-GMS, 2007 WL 7772169 (D. Del. Apr. 25, 2007) .......................................9, 15

*In re Translogic Tech., Inc.,*
    504 F.3d 1249 (Fed. Cir. 2007).......................................................................................13

*Translogic Tech., Inc. v. Hitachi, Ltd.,*
    250 F. App'x 988 (Fed. Cir. 2007) ..................................................................................13

*United Sweetener USA, Inc. v. Nutrasweet Co.,*
    766 F. Supp. 212 (D. Del. 1991)........................................................................................6

*Wall Corp. v. BondDesk Grp., LLC,*
    No. 07-844-GMS, 2009 WL 528564 (D. Del. Feb. 24, 2009)..........................6, 10, 14, 15

**STATUTES, REGULATIONS & RULES**

35 U.S.C. §§ 311-319 ............................................................................................................3

35 U.S.C. § 311(b)..................................................................................................................3

35 U.S.C. § 314(a) ..................................................................................................................3

35 U.S.C. § 314(b) .............................................................................................................1, 3, 7

35 U.S.C. § 315(e)(2)..........................................................................................................3, 10

35 U.S.C. § 316(a)(11)........................................................................................................1, 3, 7

35 U.S.C. § 316(c) ..................................................................................................................3

35 U.S.C. § 316(e) .............................................................................................................11

37 C.F.R. § 42.107 ......................................................................................................1, 3, 7

**OTHER AUTHORITIES**

H.R. Rep. No. 112–98 (I) (2011), *reprinted in* 2011 U.S.C.C.A.N. 67,
    2-11 WL 2150541 ..........................................................................................................12

U.S. Patent & Trademark Office, *Inter Partes* Reexamination Filing Data – June 30,
    2012, *available at* http://www.uspto.gov/patents/stats/
    IP_quarterly_report_June_30_2012.pdf (last visited Mar. 12, 2013) .....................................11

## INTRODUCTION

Defendant Atrium Medical Corporation ("Atrium") moves for a stay of this patent infringement case in light of the six *inter partes* review petitions that Atrium filed last week with the United States Patent and Trademark Office ("PTO"). Atrium filed these petitions with the PTO shortly after Plaintiff Davol, Inc. ("Davol") served its Complaint on Atrium, and contemporaneously with the filing of Atrium's Answer and Counterclaims.

Atrium's petitions challenge as invalid all of the claims (a total of 212 claims) of two of the three patents asserted in this suit, U.S. Patent Nos. 7,785,334 ("the '334 patent") and 7,806,905 ("the '905 patent"). These challenged patents are also asserted in another action pending before the Court filed on the same day as this action, *Davol, Inc. v. Ethicon, Inc.,* C.A. No. 12-959-GMS. Atrium's *inter partes* review petitions have substantial merit, bringing to the attention of the PTO several prior art references that the PTO had not previously considered in evaluating the claims of the '334 and '905 patents. By statute and regulation, the PTO must decide within six months whether to grant these petitions, and if granted, must complete its review within twelve to eighteen months. 35 U.S.C. §§ 314(b), 316(a)(11); 37 C.F.R. § 42.107. The only other patent asserted in this suit, U.S. Patent No. 7,824,420 ("the '420 patent"), involves technology, features, documents, and witnesses that overlap those of the two patents for which Atrium has petitioned for *inter partes* review.

To avoid the unnecessary expenditure of time and resources by the Court and the parties, Atrium respectfully requests that the Court stay this case—which has not progressed beyond the serving of Davol's Complaint and Atrium's Answer and Counterclaims—pending the outcome of the PTO's *inter partes* review of two of the three patents-in-suit.

## NATURE AND STAGE OF PROCEEDINGS & FACTUAL BACKGROUND

This case is still in the pleadings stage.  Davol filed but did not serve its Complaint on

July 20, 2012, asserting one or more claims of the '334, '905, and '420 patents.  (*See* D.I. 1.)  All

three patents relate to implantable devices used in hernia repairs.[1]  Davol claims the patents are

infringed by either Atrium's C-QUR V-Patch™ or C-QUR TacShield™ products.  (*See* D.I. 1.)

Atrium's C-QUR V-Patch™ and C-QUR TacShield™ products are implantable devices used in

the repair of hernias.

During the seven months following the filing of Davol's Complaint, the parties discussed

potential resolution of this case.  Davol offered to license its asserted patents to Atrium for

money.  At the parties' request, the Court three times extended the time for Davol to serve its

Complaint.  (*See* D.I. 5 and related Order;  D.I. 6 and related Order;  D.I. 7 and related Order.)

This case is thus in its earliest stage: Davol subsequently served its Complaint on

February 19, 2013 (*see* D.I. 8);  Atrium filed its Answer and Counterclaims on March 12, 2013

(*see* D.I. 12); the Court has not yet issued a notice of scheduling conference; the parties have not

yet had their Rule 26(f) conference; no initial disclosures have been exchanged; no discovery

requests have been served; and no trial date has been set.

All of the claims of the '334 and '905 patents are invalid in light of other patents and

prior art.  Accordingly, on March 13 and 14, 2013, shortly after Davol served its Complaint,

Atrium filed with the PTO six petitions for *inter partes* review ("IPR") of the '334 and '905

patents, under the new IPR procedure at the PTO created by the America Invents Act.  Atrium is

challenging all of the claims (over 200) in the '334 and '905 patents, and has spent over

---

[1]     The '334 patent, entitled "Implantable Prosthesis," issued on August 31, 2010.  The '905 patent, also entitled "Implantable Prosthesis," issued on October 5, 2010.  The '420 patent, also entitled "Implantable Prosthesis," issued on November 2, 2010.

$500,000 preparing and filing these IPRs. For the '905 patent, Atrium's IPR petitions are based on seven prior art references, three of which were never considered by the PTO. (*See* Atrium's '905 *inter partes* review petitions attached as Exhibit A (claims 1-59) and Exhibit B (claims 60-86) (both minus appendices).)[2] For the '334 patent, Atrium's IPR petitions are based on eight prior art references, three of which were never considered by the PTO. (*See* Atrium's '334 *inter partes* review petitions attached as Exhibit C (claims 1-23 and 78-98), Exhibit D (claims 24-49), Exhibit E (claims 50-77), and Exhibit F (claims 99-126) (all minus appendices).)

The new *inter partes* review procedure used by Atrium, which is similar to the old *inter partes* reexamination ("IPX") procedure, has several features that support granting a stay. *See* 35 U.S.C. §§ 311-319. First, *inter partes* review is rapid. The PTO must decide to grant Atrium's IPR petitions by September 2013, and if granted, must complete its review by September 2014 (or, for good cause, March 2015). *See* 35 U.S.C. §§ 314(b), 316(a)(11); 37 C.F.R. § 42.107. Second, *inter partes* review is balanced. Both Atrium and Davol will have the opportunity to participate in any granted review by presenting argument and evidence obtained through fact and expert discovery, and the review will be conducted by a panel of three administrative patent judges from the PTO's new Patent Trial and Appeal Board. *See* 35 U.S.C. § 316(c). In addition, the standard for granting an IPR is now "a reasonable likelihood that the petitioner would prevail," rather than the former easier to meet IPX standard of "significant new question of patentability." 35 U.S.C. § 314(a). Third, *inter partes* review saves effort and expense. Atrium will be estopped from re-litigating in this case the invalidity issues of anticipation or obviousness based on prior art patents or printed publications that Atrium raised, or reasonably could have raised, during a granted IPR. *See* 35 U.S.C. §§ 311(b), 315(e)(2).

---

[2] All exhibits referenced herein are attached to the Declaration of Gregory P. Teran, filed contemporaneously herewith.

The case concerning the '420 patent, which is the only asserted patent not subject to IPR proceedings, should also be stayed. The technology, features, documents, and witnesses relating to the asserted '334 and '905 patents (whose *inter partes* review petitions are now pending at the PTO) overlap with those relating to the asserted '420 patent (the only remaining patent in this case). Like the '334 and '905 patents, the '420 patent relates to implantable prostheses used in the repair of hernias. Even though the '420 patent relates to a different configuration of implantable prosthesis than the '334 and '905 patents, all three patents relate to the same general field of technology and medicine—hernia repair—that would need to be addressed by the Court in a *Markman* proceeding and by a jury in a trial. All three patents have claims to implantable prostheses (i) for treating the same types of tissue or muscle defects, (ii) with multiple layers, (iii) including barrier layers, sometimes absorbable or adhesion resistant, (iv) including mesh layers, sometimes made of polypropylene, and (v) including features (such as straps or pockets) to facilitate positioning of the prosthesis. Accordingly, Atrium filed its motion to stay the entire case pending *inter partes* review of the '334 and '905 patents.

There is also another action pending before the Court in which Davol is asserting the '334 and '905 patents that are the subject of Atrium's IPR petitions, *Davol, Inc. v. Ethicon, Inc.,* C.A. No. 12-959-GMS ("the Ethicon Action"). The Ethicon Action was filed by Davol on the same day as this action, but Davol has not yet served the complaint in that case, having requested and received three extensions of time in which to do so. As in this case, the Ethicon Action is in its early stages: no answer has been filed; the Court has not yet issued a notice of scheduling conference; the parties have not yet had their Rule 26(f) conference; no initial disclosures have been exchanged; no discovery requests have been served; and no trial date has been set.

## SUMMARY OF ARGUMENT

Each of the factors courts consider when deciding whether to stay litigation strongly

supports a stay of this case pending the *inter partes* review of two of the three patents-in-suit.

1.      *First*, Davol will not be prejudiced or tactically disadvantaged by a stay.  The

'334 and '905 patents issued in 2010, but Davol waited almost two years before filing its

Complaint (which was the first time Davol raised the patents with Atrium in any fashion).  Davol

then asked the Court for, and received, three extensions for serving its Complaint.  During the

seven months that elapsed between Davol filing and serving its Complaint, Davol offered to

license the patents to Atrium for money (and, upon information and belief, is also discussing

licensing with another company in the Ethicon Action pending before the Court, asserting the

same patents).  Monetary damages, therefore, would compensate Davol for any alleged harm.

Furthermore, delay of litigation proceedings caused by a stay does not alone constitute undue

prejudice to the non-moving party.

2.      *Second*, if the PTO grants an Atrium *inter partes* review petition, the result of the

review proceeding will eliminate or narrow issues in this case.  Davol has asserted only patent

infringement claims against Atrium.  Atrium will be estopped from raising anticipation or

obviousness arguments in this case that were raised or reasonably could have been raised in the

*inter partes* review.  Proceeding with this case in parallel with the PTO's *inter partes* review of

two of the three patents-in-suit would create a substantial risk that the Court and the parties will

expend time and resources litigating issues that will be either removed or substantially altered in

the *inter partes* review, and would create a substantial risk of inconsistent results.

3.      *Third*, Atrium filed this motion to stay when this case has not progressed beyond

the pleadings stage.  The Court has not entered a scheduling order, discovery has not begun, and

no trial date has been set.

## ARGUMENT

**A.    The Relevant Factors All Weigh in Favor of Staying This Case.**

Courts ruling on a motion to stay consider "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 06-514-GMS, 2007 WL 2892707, at *4 (D. Del. Sept. 30, 2007) ("DexCom II") (granting motion for stay); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (stating similar test). All three of these factors weigh heavily in favor of a stay of this litigation pending the outcome of the *inter partes* review of all of the claims of two of the three patents-in-suit.

**1.    A Stay of This Action Will Not Unduly Prejudice or Create a Clear Tactical Disadvantage to Davol.**

A stay pending *inter partes* review of two of the three patents-in-suit will not unduly prejudice Davol or provide Atrium with any clear tactical advantage in this case. Instead, a stay is favored because plaintiff Davol has already obtained litigation delays from the Court, has not yet expended substantial resources on this litigation, and has shown a willingness to accept money damages.

First, as discussed above, Davol has already sought and received litigation delays from the Court by successfully requesting three extensions to the time for serving its Complaint. (*See* D.I. 5, 6, & 7 and related Orders.) In light of the resulting seven-month delay, and as this Court has recognized, the delay of litigation proceedings caused by a stay pending patent re-evaluation by the PTO "does not, by itself, amount to undue prejudice." *Wall Corp. v. BondDesk Grp., LLC*, No. 07-844-GMS, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009) (citing *Research in Motion, Ltd. v. Visto Corp.*, 545 F. Supp. 2d 1011, 1012 (N.D. Cal. 2008)). Furthermore, if the

PTO decides not to grant Atrium's *inter partes* review petitions, "the stay will be relatively short," which "weighs in favor of a stay." *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21-JST, 2012 WL 7170593, at \*3 (C.D. Cal. Dec. 19, 2012). The PTO must decide whether to grant Atrium's *inter partes* review petitions within six months, and if granted, must complete its review within twelve to eighteen months. 35 U.S.C. §§ 314(b), 316(a)(11); 37 C.F.R. § 42.107. Thus "the delay caused by the new IPR procedure is significantly less than the delay caused by the old [IPX] procedure." *Semiconductor Energy*, 2012 WL 7170593, at \*3.

Second, Atrium's filing of this motion for a stay at the earliest reasonable stage of the case—shortly after Davol served its Complaint and contemporaneously with the filing of Atrium's Answer and Counterclaims—further prevents prejudice to Davol, because Davol has not yet invested substantial resources in this litigation. Davol has not even identified which specific claims of the '334 and '905 patents that it might assert against Atrium, but Atrium nevertheless has already invested considerable resources in preparing and filing its *inter partes* review petitions challenging all 212 claims of the '334 and '905 patents. With the large number of claims in the '334 and '905 patents, Atrium spent over $500,000 preparing and filing these IPRs. Furthermore, Atrium prepared and filed its IPR petitions even more quickly than other defendants whose motions to stay pending IPR have been granted. *See id.* (granting a motion to stay pending *inter partes* review eleven months after the complaint was filed and four months after infringement contentions were filed, and finding "the need to assess the disputed claims a valid reason for not filing a[n IPR] petition shortly after the Complaint was filed"); *Clearlamp, LLC v. LKQ Corp.*, No. 12-2533, Dkt. Nos. 1, 22, and 43 (N.D. Ill. Oct. 18, 2012) (Minute Entry) (staying case pending *inter partes* review six months after the complaint was filed and

three months after the complaint was served) (attached as Exhibit G); *Bd. of Trustees of the Univ. of Ill. v. Micron Tech., Inc.*, No. 11-2288-SLD-JAG, Text Order (C.D. Ill. Aug. 24, 2012) (granting motion to stay pending *inter partes* review twenty months after complaint was filed, five months after discovery began, and before any IPR petitions were filed) (attached as Exhibit I).

Indeed, Davol would conserve resources by participating in the *inter partes* proceedings and then re-assessing this litigation. Davol has asserted only patent infringement claims in this case. If Atrium's *inter partes* review results in the asserted claims being cancelled, Davol will save the time and fees required to prepare those claims for trial—both in this case and in the Ethicon Action. If the asserted claims are amended during *inter partes* review, Davol will be able to prepare the corrected claims for trial rather than expending resources preparing improper claims for trial—both in this case and in the Ethicon Action. If claims survive *inter partes* review, Davol will have the benefit of the PTO's narrowing of the issues and of the estoppel preventing Atrium from raising in this litigation any anticipation or obviousness arguments that were raised or reasonably could have been raised in the *inter partes* review proceeding. *See Alloc, Inc. v. Unilin Décor N.V.*, No. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (staying case because "refinement of the issues" during reexamination "will benefit both parties by reducing litigation costs").

Third, even though Davol and Atrium both manufacture hernia repair devices, Davol has not sought a preliminary injunction and has offered to license the patented technology to Atrium and also apparently to Ethicon. In light of Davol's willingness to license the patents-in-suit to Atrium and others, Davol cannot plausibly argue that a stay would cause it to suffer any harm that would not be compensable by money damages. *See Inteplast Grp., Ltd. v. Coroplast, Inc.,*

No. 4:08-CV-1413 CAS, 2009 WL 1774313, at *2 (E.D. Mo. June 23, 2009) (granting motion to stay based in part on finding that plaintiff's offer to license asserted patent "indicates that [plaintiff] is willing to forego its patent rights for monetary compensation"); *see also High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (rejecting plaintiff's claim of irreparable harm in preliminary injunction context on grounds that plaintiff's offer to license patent "suggests that any injury suffered by [plaintiff] would be compensable in damages"); *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 225 n.24, 228 (D. Del. 2007) (denying motion for permanent injunction after finding that "[p]laintiff's licensing activities ... suggest that plaintiff's injury would be compensable in damages"). If it is later determined that Atrium infringes one of the patents-in-suit, Davol may recover money damages for any infringement that takes place during a stay. *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985), *rev'd in part on other grounds*, 771 F.2d 480 (Fed. Cir. 1985).

Permitting this action to go forward while *inter partes* review is pending, however, would not only relinquish the efficiencies described above, but would also create a substantial risk of multiple, inconsistent rulings and of this Court issuing advisory opinions. *See Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 05-590-GMS, 2006 WL 2375035, at *6 (D. Del. Aug. 16, 2006) (staying case pending reexamination to "conserve the resources of the parties and the court, thereby promoting efficiency"); *Textron Innovations Inc. v. Toro Co.*, No. 05-486-GMS, 2007 WL 7772169, at *3 (D. Del. Apr. 25, 2007) ("[N]ot staying the proceedings runs the risk of inconsistent adjudications or the issuance of advisory opinions.").

## 2.     A Stay Will Simplify the Issues and Promote Judicial Economy.

Proceeding with this litigation while *inter partes* reviews of two of the three patents-in-suit are pending at the PTO would fail to take advantage of the estoppel and other efficiencies provided by *inter partes* review, as well as creating a substantial risk that the Court and the

parties will expend time and resources litigating issues that will either be eliminated or altered by the review proceedings.

First, efficiencies result from the estoppel provisions of *inter partes* review. It is well established that where, as here, an *inter partes* proceeding at the PTO involves parties overlapping the parties in a district court litigation, the court has "an even more compelling reason to grant a stay." *EchoStar Techs. Corp v. TiVo, Inc.*, No. 5:05-CV-81-DF, 2006 WL 2501494, at *3 (E.D. Tex. July 14, 2006). By statute, Atrium is estopped in this case from asserting invalidity on any ground it "raised or reasonably could have raised" during its related *inter partes* review proceedings. 35 U.S.C. § 315(e)(2). Because of that estoppel effect, courts have found in the *inter partes* reexamination context that, "[e]ven if every claim survives reexamination unchanged, th[e] case will still be simplified because Defendant will be estopped from asserting any invalidity arguments it could have raised in its...*inter partes* reexaminations," and that the resulting simplification "weighs in favor of a stay." *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 5:12–3864–EJD, 2012 WL 6020012, at *2 (N.D. Cal. Dec. 3, 2012). Therefore, while any Atrium "counterclaims raising invalidity of the patents under 35 U.S.C. § 112 may not be adjudicated in IPR..., the IPR '[is] guaranteed to finally resolve at least some issues of validity because the requesting party is barred from seeking district court review on any grounds it could have raised in the reexamination.'" *Semiconductor Energy*, 2012 WL 7170593, at *2 (quoting *Avago Techs. Fiber IP (Sing.) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011)).

Thus, based on the estoppel effects of *inter partes* proceedings, courts have routinely granted stays while such proceedings are pending. *See id.* (granting a stay pending *inter partes* review and "giv[ing] the estoppel effect of the proceedings full weight" in favor of a stay); *Wall*

10

*Corp.*, 2009 WL 528564, at *1 ("[T]his estoppel will resolve many of the invalidity issues and streamline the litigation."); *see also EchoStar*, 2006 WL 2501494, at *3 ("[A]n *inter partes* reexamination can have no other effect but to streamline ongoing litigation.").

Second, efficiencies result from the lower burden of proof for invalidity in *inter partes* proceedings. Claims are more likely to be invalidated during *inter partes* review than in district court litigation, because in *inter partes* proceedings challenged patent claims are not presumed valid, and because in *inter partes* proceedings anticipation and obviousness must be proven by only a preponderance of the evidence rather than by clear and convincing evidence. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988); 35 U.S.C. § 316(e). Thus "the amended standards for granting *inter partes* review probably result[] in an even higher likelihood than under the prior standard that the issues in this action will be simplified by the reexamination." *Semiconductor Energy*, 2012 WL 7170593, at *3.

It is highly probable that *inter partes* review will substantially reduce and narrow the issues raised in this litigation, and may even eliminate any need for a trial. Atrium has petitioned for *inter partes* review of all 128 claims of the '334 patent and all 86 claims of the '905 patent. Of the twenty-one IPR petitions reviewed on the merits by the PTO as of March 13, 2013, the PTO granted review of all challenged claims in sixteen petitions, and granted review of some of the challenged claims in four other petitions, while it denied review of only one petition. Under the previous *inter partes* reexamination procedure, the PTO cancelled or narrowed claims in 89% of the granted reexaminations. *See* U.S. Patent & Trademark Office, Inter Partes *Reexamination Filing Data* – June 30, 2012, *available at* http://www.uspto.gov/patents/stats/ IP_quarterly_report_June_30_2012.pdf (last visited Mar. 12, 2013) (attached as Exhibit J). As a result, in addition to simplifying the issues, the outcome of Atrium's *inter partes* review petitions

may encourage a reasonable settlement. *See Akeena Solar Inc. v. Zep Solar Inc.*, No. C09-05040 JSW, 2011 WL 2669453, at *5 (N.D. Cal. July 7, 2011) (continuing stay pending reexamination because "the PTO's expertise will narrow the scope of any remaining issues, promote settlement, and expedite further proceedings").

Third, efficiencies result from having the PTO evaluate prior art in the first instance. Atrium's *inter partes* petitions present four key prior art references that the PTO never considered in evaluating the patentability of any of the claims of the '334 and '905 patents. "[T]he primary responsibility for sifting out unpatentable material lies in the Patent Office." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 18 (1966). In the context of *inter partes* reexamination, the Supreme Court has observed that "Congress has amended the patent laws to account for concerns about 'bad' patents, including by expanding the reexamination process to provide for *inter partes* proceedings." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2252 (2011); *see also* H.R. Rep. No. 112–98 (I), at 47 (2011), *reprinted in* 2011 U.S.C.C.A.N. 67, 2011 WL 2150541, at *77 (describing the *inter partes* review provisions of the America Invents Act as "improvements" upon the former *inter partes* reexamination proceeding). Indeed, as this Court previously recognized in the context of reexamination, "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the [patent] claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *DexCom II*, 2007 WL 2892707, at *5 (quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)).

In the reexamination context, this Court has identified the many efficiencies gained by staying litigation while the PTO applies its "particular expertise in evaluating the prior art":

> (1) many discovery issues relating to prior art may be alleviated; (2)
> the record of the reexamination likely would be entered at trial; (3) the

issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; and (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court.

*Alloc, Inc.*, 2003 WL 21640372, at *2 (citing *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020-GMS, 2003 WL 21105073, at *2 (D. Del. May 14, 2003)). Moreover, "[s]uch a refinement of the issues will benefit both parties by reducing litigation costs ... [and] will also best conserve the court's scarce resources." *Id.*[3]

Accordingly, courts routinely stay cases pending the completion of PTO proceedings "to wait for [PTO] results that will simplify litigation by eliminating, clarifying, or limiting the claims." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 68 (D.D.C. 2002) (citing *Ethicon*, 849 F.2d at 1428, in the context of reexamination); *see also ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("[T]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings."). Even though IPR is a new procedure, courts have followed the same path with it as well. *See, e.g., Semiconductor Energy*, 2012 WL 7170593, at *4 (granting a stay pending IPR "in light of the liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO IPR proceedings"); *Clearlamp,* No. 12-2533, Dkt. No. 43

---

[3]  The Federal Circuit's decision in *In re Translogic Technology, Inc.*, 504 F.3d 1249 (Fed. Cir. 2007) illustrates the inefficiencies and waste that may result from not staying litigation pending PTO review of patents-in-suit. In that case, after the parties and the district court spent considerable time and resources, the district court action resulted in a grant of summary judgment of infringement, a jury verdict of induced infringement, and an award of $86.5 million in damages. *Id.* at 1251. A few months later, however, the PTO concluded in reexamination that the asserted patent claims were obvious and thus invalid. *Id.* The Federal Circuit consolidated the appeals from the district court litigation and the PTO reexamination, affirmed the PTO's obviousness determination, and consequently vacated the district court's decision and remanded the case to the district court for dismissal. *Id.* at 1251, 1262; *Translogic Tech., Inc. v. Hitachi, Ltd.*, 250 F. App'x 988 (Fed. Cir. 2007). Absent a stay, this case risks similar inefficiencies and costs.

(staying case three days after IPR petition filed) (attached as Exhibit G); *Micron Tech.*, No. 11-2288-SLD-JAG, Text Order (staying case before any IPR petitions were filed) (attached as Exhibit I).

### 3.    The Early Stage of This Case Strongly Favors a Stay.

A stay of litigation pending *inter partes* review is particularly appropriate where a case is in its early stages. *See Clearlamp*, No. 12-2533, Dkt. No. 39 (Def.'s Mot. to Stay) at 3-4 & Dkt. No. 43 (staying case pending *inter partes* review after discovery had started and depositions had been scheduled) (attached as Exhibit H & Exhibit G); *see also Alloc, Inc.*, 2003 WL 21640372, at *3 ("[T]he court notes that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time.  Likewise, the court has not yet set a trial date.  Therefore, the stay will be entered before any party incurs substantial litigation-related expenses."); *Wall Corp.*, 2009 WL 528564, at *2 ("[The defendant] filed the present motion…early in the case, prior to the court's scheduling conference and entry of a scheduling order.  Accordingly, this factor weighs in favor of granting a stay.")[4]

The early stage of this case favors a stay pending the PTO's evaluation of two of the three patents-in-suit.  Davol served its Complaint in this matter on February 19, 2013.  (*See* D.I. 8.)  Atrium filed its Answer and Counterclaims on March 12, 2012.  (*See* D.I. 12.)  The initial case management conference has neither occurred nor been scheduled; no discovery requests have been served; and no trial date has been set.  Neither substantial time nor substantial

---

[4]    This Court has previously granted stays in cases that have progressed further than this case.  *See, e.g., Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*, No. 06-187-GMS, 2009 WL 2969566, at *1 (D. Del. Sept. 15, 2009) (maintaining stay pending reexamination when stay had been granted after discovery began); *Pegasus*, 2003 WL 21105073, at *2 (staying case more than two years after serving complaint, less than four months before close of discovery, and less than one year before scheduled trial).

resources have yet been invested in this litigation by either side, and a stay of litigation now would save the Court and the parties unnecessary effort and costs.

**B.      The Court Should Exercise Its Discretion to Stay This Case Pending Inter Partes Review.**

The Court's inherent power to manage its docket includes the discretion to stay proceedings. *See Wall Corp.*, 2009 WL 528564, at *1 (citing *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985)). It was well established in the context of *inter partes* reexamination—the PTO proceeding that *inter partes* review has reformed and replaced—that the PTO's re-evaluation of patents involved in litigation is grounds for staying that litigation. *See Ethicon*, 849 F.2d at 1426-27 ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." (citation omitted)). Courts have continued this practice by staying cases pending the new *inter partes* review procedure. *See, e.g., Network-1 Security Solutions, Inc. v. Alcatel-Lucent USA Inc.*, No. 11-492-LED-JDL, Dkt. No. 410 (Order) (E.D. Tex. Mar. 5, 2013) (staying case pending *inter partes* review) (attached as Exhibit K); *Semiconductor Energy*, 2012 WL 7170593, at *4 (staying patent infringement case "pending final exhaustion of all pending [*inter partes* review] proceedings, including any appeals"); *Clearlamp*, No. 12-2533, Dkt. No. 43 & Dkt. Nos. 39–43 (staying case pending *inter partes* review) (attached as Exhibit G); *Micron Tech., Inc.*, No. 11-2288-SLD-JAG, Text Order (staying case pending *inter partes* review) (attached as Exhibit I).

Courts in this District and elsewhere routinely stayed cases even before the PTO granted a request for reexamination. *See, e.g., Textron Innovations*, 2007 WL 7772169, at *3 (issuing stay two months before trial and before PTO granted any of defendant's reexamination requests); *Robert Bosch Healthcare Sys.*, 2012 WL 6020012, at *1 (staying case before PTO granted

defendant's five reexamination requests).  Courts have continued this practice by staying cases while the PTO decides whether to grant a petition for *inter partes* review.  *See, e.g.*, *Semiconductor Energy*, 2012 WL 7170593, at *2-4 (staying patent infringement case before *inter partes* review petition was evaluated by PTO); *Clearlamp*, No. 12-2533, Dkt. No. 39 (Def.'s Mot. to Stay) at 4 & Dkt. No. 43 (staying case three days after defendant filed petition for *inter partes* review) (attached as Exhibit H & Exhibit G); *Micron Tech.*, No. 11-2288-SLD-JAG, Dkt. No. 70-1 & Text Order (staying case before any IPR petitions were filed) (attached as Exhibit I).

## CONCLUSION

The relevant factors all support granting a stay of this litigation.  The scope and validity of all 128 claims of the '334 patent and all 86 claims of the '905 patent will remain uncertain until the PTO makes its *inter partes* review determinations.  Litigation issues regarding the third patent-in-suit overlap with those of the '334 and '905 patents.  Accordingly, Atrium respectfully requests that the Court stay this action pending the final resolution of the *inter partes* review of the '334 and '905 patents, including all appeals.

OF COUNSEL:

Wayne L. Stoner
Gregory P. Teran
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000
wayne.stoner@wilmerhale.com
gregory.teran@wilmerhale.com

Dated:  March 18, 2013

/s/  Anne Shea Gaza
Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Travis S. Hunter (#5350)
One Rodney Square
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
hunter@rlf.com

*Attorneys for Defendant*
*Atrium Medical Corporation*

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2013, I caused to be served by **hand delivery and electronic mail** copies of the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Jack B. Blumenfeld
> Paul Saindon
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
> jbbefiling@mnat.com
> psaindon@mnat.com

I further certify that on March 18, 2013, I caused to be served by **electronic mail** copies of the foregoing document upon the following counsel of record:

> Steven C. Cherny
> Benjamin A. Lasky
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, NY 10022
> (212) 446-4800
> steven.cherny@kirkland.com
> benjamin.lasky@kirkland.com

/s/   *Anne Shea Gaza*
Anne Shea Gaza (#4093)
gaza@rlf.com