IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVOL, INC.,                                     )
                                                )
                    Plaintiff,                  )
                                                )
          v.                                    )   C.A. No. 12-958 (GMS)
                                                )
ATRIUM MEDICAL CORPORATION,                     )
                                                )
                    Defendant.                  )

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO STAY PENDING _INTER PARTES_ REEXAMINATION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com

*Attorneys for Plaintiff Davol, Inc.*

OF COUNSEL:

Steven C. Cherny
Benjamin A. Lasky
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

April 4, 2013

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND AND NATURE & STAGE OF PROCEEDINGS.............2

    A.  Davol's Patented Technology...............................................................................2

    B.  Atrium's Accused Products..................................................................................4

    C.  The Litigation And Settlement Negotiations.........................................................6

    D.  Atrium's IPR Petitions. .....................................................................................7

III.  SUMMARY OF THE ARGUMENT ...........................................................................9

IV.   ARGUMENT ............................................................................................................10

    A.  Legal Standards................................................................................................10

    B.  A Stay Would Unduly Prejudice Davol, And Present Atrium With A Clear
        Tactical Advantage. ..........................................................................................10

        1.  The Early Stage Of The IPR Process Weighs Heavily Against A
             Stay. .................................................................................................10

        2.  The Significant Prejudice To Davol Weighs Heavily Against A
             Stay. .................................................................................................13

        3.  Atrium's Motion Is Designed To Achieve An Unfair Tactical
             Advantage, Further Weighing Against A Stay. .......................................15

        4.  Davol's Willingness To Settle Does Not Weigh In Favor Of A
             Stay. .................................................................................................16

    C.  The Simplification Factor Does Not Favor A Stay...............................................17

    D.  The Early Stage Of This Litigation Does Not Favor A Stay................................20

V.    CONCLUSION ........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
    No. 05-590-GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006) .....................................14

*Alloc, Inc. v. Unilin Décor N.V.*,
    No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) ...................................18

*APP Pharms., LLC v. Ameridose LLC*,
    No. 10-4109 (JAP), 2011 WL 816622 (D.N.J. Mar. 8, 2011) ........................................17

*Auto Techs. Int'l, Inc. v. Am. Honda Motor Co.*,
    No. 06-187-GMS, 2009 WL 2969566 (D. Del. Sept. 15, 2009)....................................20

*Bd. of Trustees of the Univ. of Ill. v. Micron Tech., Inc.*,
    No. 11-2288-SLC-JAG (C.D. Ill. Aug. 24, 2012)..........................................................15

*Biomet Biologics, LLC v. Bio Rich Med., Inc.*,
    No. SACV 10-1582, 2011 WL 4448972 (C.D. Cal. Sept. 26, 2011) .........................18, 20

*Boston Scientific Corp. v. Cordis Corp.*,
    777 F. Supp. 2d 783 (D. Del. 2011) ..............................................................................13

*Clearlamp LLC v. LKQ Corp.*,
    No. 12-2533 (N.D. Ill. Oct. 18, 2012) ............................................................................15

*Cooper Notification, Inc. v. Twitter, Inc.*,
    No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ................................passim

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
    559 F.3d 1308 (Fed. Cir. 2009)........................................................................................3

*Esco Corp. v. Berkeley Forge & Tool, Inc.*,
    No. C 09-1635 SBA, 2009 WL 3078463 (N.D. Cal. Sept. 28, 2009) .................15, 16, 20

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009).....................................................................................12

*Helicos Biosciences Corp. v. Pac. Biosciences of Cal.*,
    No. 10-735-SLR, 2011 WL 6299761 (D. Del. Dec. 16, 2011).......................................14

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995)........................................................................................17

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
    370 F.3d 1131 (Fed. Cir. 2004)......................................................................................18

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
No. 12-054-GMS-MPT, 2012 WL 3866677 (D. Del. Sept. 4, 2012).................. 13, 14, 20

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
No. 12-054-GMS-MPT, 2012 WL 5599338 (D. Del. Nov. 15, 2012)............................13

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
No. 12-054-GMS-MPT, 2013 WL 663535 (D. Del. Feb. 25, 2013).............. 10, 12, 13, 19

*In re Phoenix Licensing LLC, Pat. Litig.*,
No 08-1910-MHM, 2009 WL 464993 (D. Ariz. Feb. 24, 2009) .....................................18

*In re Translogic Tech., Inc.*,
504 F.3d 1249 (Fed. Cir. 2007).....................................................................................19

*Interplast Grp., Ltd. v. Coroplast, Inc.*,
No. 4:08-CV-1413 CAS, 2009 WL 1774313 (E.D. Mo. June 23, 2009) .........................17

*Landis v. North Am. Co.*,
299 U.S. 248 (1936) ......................................................................................................10

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012).......................................................................................6

*Nestle Oil Oyj v. Dynamic Fuels, LLC*,
No. 12-662-GMS, 2013 WL 424754 (D. Del. Jan. 31, 2013)...................................12, 19

*Nidec Corp. v. LG Innotek Co., Ltd.*,
No. 6:07cv108, 2009 WL 3673433 (E.D. Tex. Apr. 3, 2009) .........................................12

*Nokia Corp. v. Apple Inc.*,
No. 09-791-GMS, 2011 WL 2160904 (D. Del. June 1, 2011).........................................10

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
No. Civ. A. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003).......................20

*Pfaff v. Wells Elecs., Inc.*,
525 U.S. 55 (1998) ........................................................................................................11

*Power Integrations v. Fairchild Semiconductor Int'l, Inc.*,
No. 08-309-JJF-LPS, 2008 WL 5335400 (D. Del. Dec. 19, 2008)..................................19

*Semiconductor Energy Lab. Co. Ltd. v. Chimei Innolux Corp.*,
No. SACV 12-21-JST (JPRx), 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012)...........15, 17

*SenoRx, Inc. v. Hologic, Inc.*,
No. 12–173–LPS–CJB, 2013 WL 144255 (D. Del. Jan. 11, 2013) .................................13

*Softview LLC v. Apple Inc.*,
No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ..........................................16

*Textron Innovations Inc. v. Toro Corp.*,
No. 05-486-GMS, 2007 WL 77721691 (D. Del. Apr. 25, 2007) .....................................14

*TouchTunes Music Corp. v. Rowe Int'l Corp.*,
676 F. Supp. 2d 169 (S.D.N.Y. 2009) ...........................................................................20

*Wall Corp. v. BondDesk Grp., LLC*,
No. 07-844-GMS, 2009 WL 528564 (D. Del. Feb. 24, 2009) ........................................14

*Wonderland Nurserygoods Co., Ltd. v. Thorley Indus., LLC*,
858 F. Supp. 2d 461 (W.D. Pa. 2012) .....................................................................11, 17

**Statutes**

35 U.S.C. § 112 ..............................................................................................................18, 19

35 U.S.C. § 141(b) .............................................................................................................8, 11

35 U.S.C. § 314(b) .................................................................................................................11

35 U.S.C. § 316(a)(11) ..........................................................................................................11

**Regulations**

37 C.F.R. § 42.107 .................................................................................................................11

## I.    INTRODUCTION

After eight months of fruitless settlement negotiations, Defendant Atrium Medical Corporation's ("Atrium's") strategy becomes clear—delay the litigation as long as possible while secretly preparing *inter partes* review ("IPR") petitions in order to move for a stay. Atrium's gamesmanship should not be countenanced, and its motion should be denied.  Indeed, the relevant factors strongly disfavor a stay.

*First*, the IPR process is in its infancy, and a stay likely will delay this case for years. The parties are direct competitors, and such a prolonged delay will deny Plaintiff Davol, Inc. ("Davol") the benefit of its patents for a significant part of their term, cause Davol significant commercial harm, and hand Atrium an unfair market advantage.  Atrium has not come close to demonstrating the "clear case of hardship or inequity" that might warrant a stay under these circumstances.

*Second*, because Atrium is not challenging all of the patents-in-suit in the PTO, the IPR process necessarily will not resolve many issues to be tried in this case.  Atrium has not articulated any legitimate reason why litigation regarding the non-challenged patent—U.S. Patent No. 7,824,420 ("the '420 patent"), which describes and claims distinct technology, is asserted against different products, and will be unaffected by Atrium's IPR petitions—should be stayed.  Furthermore, the prospect that Atrium's IPR petitions, even if granted, will lead to cancellation or amendment of ***any*** challenged claim is speculative at best, particularly where most of the prior art cited by Atrium previously was considered by the PTO during the original patent prosecutions.  Under these circumstances, the simplification factor does not favor a stay.

*Third*, the litigation is only at an early stage because Atrium engaged Davol in eight months of settlement negotiations while it secretly prepared its petitions and formulated its strategy.  Absent the delays solicited by Atrium, this case would be much further advanced.  In

any event, the early stage of the litigation cannot overcome the application of the other factors

that collectively weigh heavily against a stay.[1]

## II.      FACTUAL BACKGROUND AND NATURE & STAGE OF PROCEEDINGS

### A.      Davol's Patented Technology.

Founded in Providence, Rhode Island in 1874, Davol—a subsidiary of C.R. Bard, Inc.

("Bard")—is a leading player in the U.S. medical device industry. (Whitehead Decl. ¶ 2.)  Davol

has established this industry leadership position through an ever-expanding portfolio of proven,

innovative solutions for specialized surgical procedures, including a line of prosthetics and

techniques for hernia treatment. (*Id.*)  Two such solutions are the VENTRALEX™/

VENTRALEX™ ST and VENTRIO™/VENTRIO™ ST lines of hernia patches. (*Id.* ¶ 3.)

Although both product lines are designed for use in hernia repair, they take advantage of

different designs and surgical implant techniques. (*Id.*)

The VENTRALEX™/VENTRALEX™ ST patches comprise a flexible support ring

surrounded by two layers—a polypropylene mesh layer on the hernia side to provide for tissue

ingrowth into the patch and promotion of hernia repair, and a barrier layer on the opposite side to

minimize unwanted adhesion of the patch to internal organs. (*Id.* ¶ 4.)  Mesh "straps" assist with

placement and attachment of the patch relative to the hernia:

  

---

[1]    Even after eight months, Atrium still could not come up with prior art providing a basis for
       PTO review of the '420 patent.

(*Id.* ¶¶ 4, 5 & Ex. A (VENTRALEX™ Product Information).)  This innovative design is described and claimed in a number of U.S. patents, including U.S. Patent No. 7,785,334 ("the '334 patent"), claiming the implantable patches themselves, and U.S. Patent No. 7,806,905 ("the '905 patent"), claiming methods of repairing tissues or muscle wall defects using these patches:



(*See* Lasky Decl. Exs. A ('334 patent) & B ('905 patent), Figs. 13 & 15.)  The '334 and '905 patents were issued to Bard on August 31, 2010 and October 5, 2010, respectively, and assigned to Davol on July 12, 2012. (*See* Lasky Decl. Exs. A, B & D.)  Both name Steven Palmer Ford and Donna Schultz Torres as inventors. (*Id.*)  The VENTRALEX™ and VENTRALEX™ ST patches are marked with the number of the '334 patent. (Whitehead Decl. ¶ 6 & Exs. C, D.)[2]

Davol's VENTRIO™/VENTRIO™ ST patches also include a polypropylene mesh layer on the hernia side to provide for tissue ingrowth, and a barrier layer on the opposite side to minimize unwanted adhesion to internal organs. (*Id.* ¶ 7.)  Unlike the VENTRALEX™/ VENTRALEX™ ST patches, however, the VENTRIO™/VENTRIO™ ST patches do not rely on "straps" for placement and attachment, but solely on a "positioning pocket" formed between

---

[2]   Because it includes only method claims, the '905 patent is not subject to the marking requirements of 35 U.S.C. § 287. *See Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009).

the two layers. (*Id.*)  An opening in the polypropylene mesh layer allows the surgeon to insert his or her finger into the pocket for positioning relative to the hernia:



(*Id.* ¶¶ 7, 8 & Ex. C (VENTRIO™ Product Information).)  The innovations embodied in the VENTRIO™/VENTRIO™ ST patches are claimed, *inter alia*, in the '420 patent:



(Lasky Decl. Ex. D ('420 patent), Figs. 1 & 2.)  The '420 patent was issued to Bard on November 2, 2010, and assigned to Davol on July 12, 2012. (Lasky Decl. Exs. C, D.)  It names Stephen N. Eldridge and Roger Darois as inventors. (*Id.*)  The VENTRIO™ and VENTRIO™ ST patches are marked with the '420 patent number. (Whitehead Decl. ¶ 9 & Exs. G, H.)

**B.     Atrium's Accused Products.**

Founded in 1981, Atrium is one of Davol's primary competitors in the U.S. market for synthetic hernia repair patches. (*Id.* ¶ 11.)  In late 2011, Atrium was acquired by Maquet Cardiovascular, a subsidiary of the Getinge Group of Sweden. (*Id.* ¶ 11 & Ex. I.)  A Getinge Group press release issued at that time noted that Atrium had grown an average of 19% annually

in the prior five years, and its sales were expected to reach more than $200 million in the then-current calendar year. (*Id.*)  On April 26, 2012, Atrium announced that it would move its company headquarters "to accommodate the company's exponential growth over the last few years." (*Id.* ¶ 11 & Ex. J.)  According to Atrium's President, the move was required because Atrium had "grown tremendously over the last few years and is projected to continue expanding in the years to come." (*Id.*)

Davol accuses Atrium of infringing the '334 and '905 patents based on its sales of a hernia repair patch called the C-QUR™ V-Patch. (D.I. 1, ¶¶ 7-20.)  Davol accuses Atrium of infringing the '420 patent based on its sales of a different hernia repair patch, called the C-QUR™ TacShield. (*Id.* ¶¶ 21-27.)

Atrium's C-QUR™ V-Patch product competes directly with Davol's patented VENTRALEX™/VENTRALEX™ ST patches. (Whitehead Decl. ¶ 12.)  Both products comprise a flexible support ring surrounded by a polypropylene mesh layer to promote tissue ingrowth, and a barrier layer to minimize unwanted adhesion. (*Id.*)  And both products use "straps" for placement and attachment of the patch relative to the hernia:

  

(*Id.* ¶ 12 & Ex. K (C-QUR™ Product Brochure).)

Atrium's C-QUR™ TacShield product similarly competes directly with Davol's patented VENTRIO™/VENTRIO™ ST patches. (*Id.* ¶ 13.)  Both consist of a polypropylene layer to

promote natural healing and a barrier layer to minimize adhesion with internal organs, which together form a positioning pocket that can be accessed by a surgeon through an opening in the polypropylene mesh layer:

  

(*Id.* ¶ 13 and Ex. K (C-QUR™ Product Brochure).)

As a result of Atrium's sales of its infringing products, Davol has lost market share and sales opportunities for its own products. (*Id.* ¶ 14 & Ex. L.)[3]  Part of that lost market share has resulted from Atrium undercutting Davol on price. (*Id.* ¶ 15 & Exs. L, M.)  As a result, Davol has been forced to lower its prices to compete with Atrium's infringing products. (*Id.*)  Unless and until Atrium's infringing conduct is enjoined, Davol will continue to lose market share and sales opportunities, and suffer further price erosion, for these products. (*Id.* ¶ 16.)  This harm is irreparable. *See, e.g.*, *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1306 (Fed. Cir. 2012) (finding lost market share and price erosion to constitute irreparable harm).

### C.     The Litigation And Settlement Negotiations.

To address the harm caused by Atrium's infringing conduct, Davol commenced this action on July, 20, 2012. (D.I. 1.)  Before formally serving its Complaint, however, Davol reached out to Atrium, providing a courtesy copy of the Complaint, with a view to assessing

---

[3]     Davol commenced a separate suit in this Court, No. 12-959-GMS (D. Del.), asserting the '334 and '905 patents against the other primary market competitor, Ethicon, Inc.

Atrium's interest in settling the parties' dispute without litigation. (Hoover Decl. ¶ 4.)  Over the months that followed, a series of discussions took place between the parties. (*Id.*)  Based on Atrium's representations that the parties were close to reaching a settlement, Davol agreed to hold off serving the Complaint during the 120-day period for service under the Federal Rules of Civil Procedure, and then sought and obtained the Court's approval for three extensions totaling over three months. (*Id.* ¶ 5; D.I. 5, 6 and 7.)  By mid-February 2013, the parties had reached agreement on all terms of a settlement, and Atrium represented that all that stood in the way of an executed agreement was final management sign-off. (Hoover Decl. ¶ 6.)

At the last minute, Atrium raised a whole new set of demands that it had never made before during the previous eight months of negotiations. (*Id.* ¶ 7.)  Unable to wait for an amicable settlement any longer, Davol served its Complaint on February 19, 2013. (*Id.*; D.I. 8.)  Atrium filed its Answer to the Complaint and Counterclaims on March 12, 2013. (D.I. 12.)

### D.      Atrium's IPR Petitions.

After serving the Complaint, it became clear that Atrium had used the delay in the service of the Complaint to prepare IPR petitions for two of the three patents-in-suit, the '334 and '905 patents. (Hoover Decl. ¶ 8.)  On March 13, 2012, just one day after filing its Answer to the Complaint and Counterclaims, Atrium filed two petitions for IPR of the '905 patent. (D.I. 17-1 (Teran Decl.), Exs. A & B.)  One day later, Atrium filed four petitions for IPR of the '334 patent. (*Id.*, Exs. C through F.)  Notably, although highly motivated, Atrium has not filed *any* IPR petition against the '420 patent, which claims *separate and distinct* technology from the challenged patents. (*See* Section A, *supra*.)

As Atrium readily admits, most of the prior art applied in its IPR petitions previously was considered by the PTO during the original patent prosecutions.  For example, Atrium admits that of the eight prior art references applied against the '334 patent, *five* previously were considered

7

by the PTO. (Atrium Br. at 3.)[4]  Of the seven prior art references applied against the '905 patent,

*four* previously were considered by the PTO. (*Id.*)[5]  And, for one of the remaining three

references applied against both the '334 patent and '905 patent—U.S. Patent No. 5,496,345

(Kieturakis)—the PTO considered two family members that include substantially the same

relevant disclosure relied upon by Atrium in its IPR petitions (one of which is explicitly

discussed in the Discussion of Related Art section in the '334 and '905 patent specifications).[6]

       As of the date of this brief, the PTO has not acted on any of Atrium's IPR petitions.

Indeed, Atrium admits that the PTO might not act on the petitions until September 2013, several

months from now. (Atrium Br. at 3.)  If the PTO grants one or more of the petitions, its review

likely will not be completed until 18 months after such grant, *i.e.*, as late as March 2015. (*Id.*)  At

that time, either party may appeal the PTO's decision to the Federal Circuit, 35 U.S.C. § 141(b),

which could further delay final resolution of Atrium's IPR petitions for years.

---

[4]  U.S. Patent Nos. 5,258,000 (Gianturco), 5,545,178 (Kensey) and 5,593,441 (Lichtenstein), U.S. Patent Publication No. 2002/0103494 (Pacey), and International Patent Publication No. WO 2002/22047 (Cherok) were all considered by the PTO during prosecution of the '334 patent. (*See* Lasky Decl. Ex. A ('334 patent), References Cited; *see also* D.I. 17-1 (Teran Decl.), Ex. C at 3-5, Ex. D at 3-5, Ex. E at 3-5, Ex. F at 3-5.)

[5]  The Gianturco '000 patent, U.S. Patent Nos. 5,531,759 (Kensey) and 5,766,246 (Mulhauser), and the Pacey patent publication were all considered by the PTO during prosecution of the '905 patent. (*See* Lasky Decl. Ex. B ('905 patent), References Cited; *see also* D.I. 17-1 (Teran Decl.), Ex. A at 3-5, Ex. B at 3-5.)

[6]  Although the PTO did not explicitly consider the Kieturakis '345 patent, the PTO considered family members U.S. Patent Nos. 5,702,416 (Kieturakis) and 5,836,961 (Kieturakis), both of which include the same figures and substantively the same disclosures relied upon by Atrium in its IPR petitions. (*See* D.I. 17-1 (Teran Decl.), Exs. A through K (relying on Kieturakis '345 patent at 8:42-9:36, 11:40-61 and Figs. 12-14, 17-19 and 27)); *compare, e.g.*, Lasky Decl. Ex. E (Kieturakis '345 patent) at 8:42-9:38, 11:40-61 and Figs. 12, 16-19 and 27 *with* Lasky Decl. Exs. F (Kieturakis '416 patent) at 9:37-10:32, 12:33-54 and Figs. 12-14, 17-19 and 27, and G (Kieturakis '961 patent) at 9:57-10:52, 12:53-13:7 and Figs. 12-14, 17-19 and 27; *see also* Lasky Decl. Ex. A ('334 patent) at 1:49-57 & B ('905 patent) at 1:49-57 (discussing the Kieturakis '961 patent in the Discussion of Related Art).)

### III.    SUMMARY OF THE ARGUMENT

1.      Even under the purportedly stricter time deadlines applicable to IPR provided by the America Invents Act ("AIA"), final resolution of Atrium's petitions through the PTO and any appeals could take years.  Because the parties are direct competitors, Atrium's unfettered infringement during such a prolonged stay would cause Davol significant harm, including lost market share and price erosion, and would deny Davol the benefit of a significant portion of its patents' terms.  Atrium has not come close to establishing the requisite "clear case of hardship or inequity" that might warrant a stay under these circumstances.  Furthermore, Atrium's conduct to date demonstrates that its motives are purely tactical—it seeks to use a stay to gain an unfair advantage in the litigation and the market.  This factor therefore weighs strongly against a stay.

2.      One patent-in-suit, the '420 patent, is not subject to an IPR petition.  That patent, by law and in fact, claims separate and distinct inventions from those claimed in the '334 and '905 patents being challenged before the PTO, is asserted against different Atrium products, and will be unaffected by Atrium's IPR petitions.  Atrium has not articulated any legitimate reason why the litigation regarding the '420 patent should be stayed.  Furthermore, Atrium's petitions on the '334 and '905 patents were only recently filed, and the PTO has not yet acted on them, nor will it likely do so for months.  The prospect that PTO review will result in ***any*** challenged patent claim being cancelled or amended is entirely speculative.  The simplification factor therefore does not favor a stay.

3.      Finally, under the circumstances here, where Atrium solicited extensive delays in service of the Complaint, the early stage of the litigation does not weigh in favor of a stay and, in any event, cannot overcome the other factors that collectively weigh heavily against a stay.

## IV.     ARGUMENT

### A.     Legal Standards.

"The decision to stay a case is firmly within the discretion of the court." *See Nokia Corp. v. Apple Inc.*, No. 09-791-GMS, 2011 WL 2160904, at *1 (D. Del. June 1, 2011) (citation omitted). A stay pending IPR is not automatic; rather, the standards for granting a stay pending IPR are the same as those for granting a stay pending *inter partes* reexamination. *See ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS-MPT, 2013 WL 663535, at *3 (D. Del. Feb. 25, 2013) ("[T]here is no mandatory stay required under the AIA for grants of *inter partes* reexaminations, and the traditional three-part test to determine whether a stay is appropriate still applies."). The court's discretion is therefore guided by the following factors: "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set." *Id.* at *1; *see also Nokia*, 2011 WL 2160904, at *1. "Generally, the party seeking a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that a stay for which he prays will work damage to some one else.'" *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)); *see also ImageVision.Net*, 2013 WL 663535, at *5.

### B.     A Stay Would Unduly Prejudice Davol, And Present Atrium With A Clear Tactical Advantage.

The first factor—"whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party"—strongly disfavors a stay.

#### 1.     The Early Stage Of The IPR Process Weighs Heavily Against A Stay.

Because Atrium filed its IPR petitions just days before filing its stay motion, the IPR

process is in its infancy, and a stay could delay this litigation for years.  Atrium asserts that, "[b]y statute and regulation, the PTO must decide within six months whether to grant these petitions, and if granted, must complete its review within twelve to eighteen months." (Atrium Br. at 1, 3 (citing 35 U.S.C. §§ 314(b), 316(a)(11); 37 C.F.R. § 42.107.)  Even according to those deadlines, however, Atrium admits that the PTO may not complete its review of Atrium's IPR petitions until March 2015, almost two years from now. (Atrium Br. at 3.)  And, Atrium omits to mention the possibility of subsequent Federal Circuit appeals, which could add years to any stay. *See* 35 U.S.C. § 141(b).

If Atrium's requested stay is granted, therefore, Davol could suffer the loss of a significant portion of the remaining terms of its patents.[7]  A patent is a wasting asset, providing the patentee with the right to exclude others from using its property for only a limited time. Davol, which has spent substantial resources in developing the patented technology and shepherding its patents through the PTO, is entitled to enjoy the benefit of exclusivity granted during the entire term of its patents. *See Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998) ("[T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time.").  Denying Davol its legitimate right to exclude and forcing it to compete against its own technology would cause Davol significant prejudice. *See, e.g.*, *Wonderland Nurserygoods Co., Ltd. v. Thorley Indus., LLC*, 858 F. Supp. 2d 461, 464 (W.D. Pa. 2012) ("A patent grants 'to the patentee . . . the right to exclude others from making, using, offering for sale, or selling the invention.' 35 U.S.C. § 154 (2012) . . . Thus, because a stay would prohibit [the patentee] from enforcing its right to exclude for several years, at a

---

[7]   The '905 and '420 patents will expire in 2022, while the '334 patent will expire in 2025.

minimum, the Court finds that it would be prejudiced by a stay.").[8]

Atrium argues that a stay is nevertheless "favored" because "if the PTO decides not to grant Atrium's *inter partes* review petitions, 'the stay will be relatively short.'" (Atrium Br. at 6-7.)  But to accept this argument would be to find that a stay is warranted in *every* case where an IPR petition is filed, under *any* circumstances.  That is not the law. *See ImageVision.Net*, 2013 WL 663535, at *3 ("[T]here is no mandatory stay required under the AIA for grants of *inter partes* reexaminations . . . .").  Indeed, as Judge Newman cautioned in *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, if PTO proceedings are "routinely available to delay the judicial resolution of disputes, the procedure is subject to inequity, if not manipulation and abuse, through the delays that are inherent in PTO activity." 582 F.3d 1288, 1305 (Fed. Cir. 2009) (Newman, J., *concurring*).

---

[8]   That Davol has not sought a preliminary injunction does not weigh in favor of a stay. *See ImageVision.Net*, 2013 WL 663535, at *6 (rejecting argument that "because plaintiff failed to move for preliminary injunction, it has 'undercut any competitive harm caused by the stay,'") (citation omitted); *Cooper Notification*, 2010 WL 5149351, at *4 (holding that the patentee's decision not to seek a preliminary injunction "tells one nothing . . . about the potential irreparability of any harm from any infringement (if ultimately proven)."); *cf. Nestle Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662-GMS, 2013 WL 424754, at *3 (D. Del. Jan. 31, 2013) ("***Where the question of 'direct competition' remains unanswered***, courts have sometimes considered whether the plaintiff sought a preliminary injunction.") (emphasis added).  Nor does the fact that "Davol has already sought and received litigation delays from the Court by successfully requesting three extensions to the time for serving its Complaint" indicate that Davol will not be prejudiced by a stay. *See, e.g., Nidec Corp. v. LG Innotek Co., Ltd.*, No. 6:07cv108, 2009 WL 3673433, at *3 (E.D. Tex. Apr. 3, 2009) ("While it is true that both parties have requested and consented to extensions on a number of deadlines in this case, it does not logically follow that these extensions show that Plaintiff will not be prejudiced by a stay.").  Indeed, as discussed above, Davol sought the extensions of the deadline for service of the Complaint at Atrium's behest to facilitate a potential settlement.  The Court also should not be burdened by numerous defensive preliminary injunction motions filed to preserve patentees' ability to oppose a stay.  Davol and Atrium are competitors.  Davol owns a number of important patents in the field and it is being damaged by Atrium's infringement.  Davol need not file for preliminary injunctive relief merely to avoid a stay.

Here, because the IPR process has only just commenced, and a stay could delay this case for years, the status of the IPR proceedings disfavors a stay. *See ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS-MPT, 2012 WL 3866677, at *4 (D. Del. Sept. 4, 2012) ("The only affirmative step taken in the reexamination process thus far has been to file a request. The prejudice to plaintiff resulting from the status of the reexamination proceedings disfavors granting a stay."), *Report & Recommendation adopted-in-part, overruled-in-part on other grounds*, 2012 WL 5599338 (D. Del. Nov. 15, 2012).

### 2.    The Significant Prejudice To Davol Weighs Heavily Against A Stay.

"With respect to prejudice, the court must look to the competing interests of the parties, and determine if there is a 'fair possibility' that a stay would be detrimental to the opposing party." *ImageVision.Net*, 2013 WL 663535, at *5. Indeed, "courts are generally reluctant to stay proceedings where the parties are direct competitors." *Id.* at *6 (citation omitted); *see also Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011). In such cases, "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *SenoRx, Inc. v. Hologic, Inc.*, No. 12–173–LPS–CJB, 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013). "If there is even a 'fair possibility' that a stay would prove detrimental to one of the parties, then the party requesting the stay must demonstrate that the denial of a stay would result in a 'clear case of hardship or inequity.'" *ImageVision.Net*, 2013 WL 663535, at *5 (citation omitted); *Cooper Notification*, 2010 WL 5149351, at *2.

Here, there is more than a "fair possibility" that a stay will harm Davol. Each of Atrium's accused products competes directly with patented products sold by Davol. (Whitehead Decl. ¶¶ 12-13.) Sales of Atrium's accused products already have caused market share loss and

price erosion for Davol's own competing products, and such harm will continue unless and until

Atrium is enjoined. (*Id.* ¶¶ 14-16.) Under these circumstances, the prolonged delay of this

litigation sought by Atrium will cause significant harm to Davol.

In contrast, the only alleged harm Atrium contends it will suffer absent a stay is the

burden of potentially unnecessary litigation. (Atrium Br. at 1, 14-15.) But that burden is present

in every case where PTO reexamination or review is sought, and cannot alone constitute the

requisite "clear case of hardship or inequity" to warrant a stay. *See ImageVision.Net*, 2013 WL

663535, at *6 ("Finally, defendant contends it will suffer financial hardship through unnecessary

litigation if a stay is denied, but fails to cite any legal basis that litigation alone constitutes

hardship or inequity. As a result, the factor of the competitive relationship between the parties

weighs heavily against granting a stay.").[9] Under these circumstances, "[t]he element of direct

competition strongly favors denying [Atrium's] motion for a stay." *See ImageVision.Net*, 2012

WL 3866677, at *4; *see also Helicos Biosciences Corp. v. Pac. Biosciences of Cal.*, No. 10-735-

SLR, 2011 WL 6299761, at *3 (D. Del. Dec. 16, 2011) ("Helicos and the defendants are all life

---

[9] As in *ImageVision.Net*, Atrium's heavy reliance on *Wall Corp. v. BondDesk Grp., LLC*, No.
07-844-GMS, 2009 WL 528564 (D. Del. Feb. 24, 2009) here is misplaced. Indeed, in *Wall*,
"at the time of the court's decision on the motion to stay, the PTO had already accepted
defendant's reexamination request and had issued a first office action rejecting all claims of
the patent-in-suit. Additionally, there was no prejudice argument regarding the business
relationship of the parties in that case. Conversely, here the PTO has not decided to grant
defendant's reexamination request, and the parties are undisputedly direct competitors. In
*Wall Corp.*, unlike the instant matter, the defendant could rightfully argue the *only* prejudice
claimed by the plaintiff was attributed to any ongoing delay." *ImageVision.Net*, 2012 WL
3866677, at *5 n.67 (emphasis in original). In *Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
in contrast to this case, all patents-in-suit were subject to reexamination, and there was no
evidence that a stay would provide the defendant with a tactical advantage. No. 05-590-
GMS, 2006 WL 2375035, at *5 (D. Del. Aug. 16, 2006). Similarly, in *Textron Innovations
Inc. v. Toro Corp.*, all patents-in-suit were subject to reexamination and, in addition, the
Court found it significant that "because this is a suit for money damages, a stay does not
unduly prejudice Textron in that it does not compete with Toro for sales." No. 05-486-GMS,
2007 WL 77721691, at *3 (D. Del. Apr. 25, 2007). That is not the case here.

sciences companies engaged in the business of developing genetic analysis technologies, which favors denial of PacSun's motion to stay.").

### 3.   Atrium's Motion Is Designed To Achieve An Unfair Tactical Advantage, Further Weighing Against A Stay.

Atrium's conduct in this litigation and the associated settlement negotiations indicate that its stay motion is designed to achieve an unfair tactical advantage.  Indeed, Atrium's brief trumpets the fact that it "spent over $500,000 preparing and filing these IPRs." (Atrium Br. at 2-3; *see also id.* at 7.)  But it did so without notifying Davol, at a time when it purported to be negotiating in good faith toward a settlement (and was soliciting delays in the service of the Complaint ostensibly to facilitate such negotiations). (*See* Hoover Decl., *generally*.)

*Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. C 09-1635 SBA, 2009 WL 3078463 (N.D. Cal. Sept. 28, 2009) is instructive.  In that case, the defendant "made no effort to seek reexamination of the patents-in-suit until it became apparent that Plaintiff was unwilling to license its patents and that litigation was inevitable," at which time it commenced reexamination of the patent-in-suit "in anticipation of the Plaintiff's filing suit following their unsuccessful negotiations." *Id.* at *4.  Based on those facts, the court concluded that "the record lends credence to Plaintiff's assertion that Defendant is attempting to use the reexamination process in order to gain a tactical advantage in the litigation," and therefore denied a stay. *Id.*[10]

Here, the tactical nature of Atrium's conduct is even more apparent.  Indeed, Atrium was

---

[10]  None of the cases cited by Atrium involved the gamesmanship present here.  Furthermore, in each of *Semiconductor Energy Lab. Co. Ltd. v. Chimei Innolux Corp.*, No. SACV 12-21-JST (JPRx), 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012), *Clearlamp LLC v. LKQ Corp.*, No. 12-2533 (N.D. Ill. Oct. 18, 2012) (Atrium Ex. H) and *Bd. of Trustees of the Univ. of Ill. v. Micron Tech., Inc.*, No. 11-2288-SLC-JAG (C.D. Ill. Aug. 24, 2012) (Atrium Ex. I), all of the patents-in-suit were being reexamined, and the parties were not direct competitors, circumstances not present here.

aware of Davol's infringement allegations no later than July 2012 when Davol filed the

Complaint in this action, but Atrium did not seek IPR review at that time.  Rather, Atrium strung

Davol along with fruitless settlement negotiations, buying time to prepare its IPR petitions in

secret.  (*See* Hoover Decl. ¶¶ 4-6.)  Then, as soon as its IPR petitions were ready to file, Atrium

suddenly derailed the settlement negotiations, having successfully held the litigation in abeyance

for months. (*Id.* ¶¶ 7-8.)  As in *Esco*, the timing of Atrium's IPR petitions and its stay motion

indicate that it is attempting to use the IPR process to gain an unfair tactical advantage over

Davol.  This weighs heavily against a stay. *See Esco*, 2009 WL 3078463, at \*4.

### 4.    Davol's Willingness To Settle Does Not Weigh In Favor Of A Stay.

Atrium argues that Davol's willingness to settle the parties' dispute for money

demonstrates that it will not be prejudiced by a stay. (Atrium Br. at 5-6, 8.)  In *Cooper*

*Notification*, the court flatly rejected the same argument as contrary to public policy:

> The Court is troubled by Defendants' attempt to use settlement discussions
> as a sword to defeat [plaintiff's] desire to proceed with litigation rather
> than succumb to a stay.  There is a strong and long-standing public policy
> favoring settlement and Defendants' use of settlement efforts in this
> manner is in direct tension with this policy.

2010 WL 5149351, at \*4 (citations omitted).  Here as well, Atrium's misguided attempt to use

Davol's willingness to resolve the parties' dispute amicably as a sword to deprive Davol of its

property rights should be rejected. *See id.*; *see also Softview LLC v. Apple Inc.*, No. 10-389-LPS,

2012 WL 3061027, at \*4 (D. Del. July 26, 2012) ("Staying this litigation in favor of the

reexamination proceedings would provide [defendant] with its choice of forum without any

compelling justification for doing so.").[11]

---

[11]    In contrast to this case, in *Interplast Grp., Ltd. v. Coroplast, Inc.*, there was evidence that the
defendant had sold a prior version of the accused product, with similar features, for 17 years
before the suit was filed, which weighed against a finding of prejudice. No. 4:08-CV-1413

### C.      The Simplification Factor Does Not Favor A Stay.

The second factor—"whether a stay will simplify the issues in question and trial of the

case"—also does not favor a stay.  As an initial matter, the '420 patent is not the subject of any

IPR petition.  As another court noted in denying a stay under similar circumstances:

> Of particular note is that the reexamination proceedings will not resolve
> this case in its entirety, as [one patent-in-suit] is not subject to
> reexamination.  Consequently, no matter what the outcome of the
> reexamination proceedings, which may not reach a final conclusion for a
> period of years, the parties will have to litigate infringement, willfulness,
> etc., as to [that patent-in-suit] before this Court.

*APP Pharms., LLC v. Ameridose LLC*, No. 10-4109 (JAP), 2011 WL 816622, at *2 (D.N.J. Mar.

8, 2011).[12]  Other courts also have routinely denied stays where not all patents-in-suit and/or

asserted claims are subject to PTO review. *See Wonderland Nurserygoods*, 858 F. Supp. 2d at

465 ("Here, at least two claims will be untouched by the reexamination.  Thus, while it appears

likely that some of the issues will change as the claims are amended, it is not clear the degree to

which reexamination will simplify the issues that this Court must address.  Thus, this factor

---

CAS, 2009 WL 1774313, at *2 (E.D. Mo. June 23, 2009).  In *High Tech Med.
Instrumentation, Inc. v. New Image Indus., Inc.*, the Federal Circuit was considering
irreparable harm standards for preliminary injunction purposes.  49 F.3d 1551, 1557 (Fed.
Cir. 1995).  Nothing in the applicable caselaw suggests that a stay should be granted unless
the patentee can show that a preliminary injunction is warranted and, in fact, courts have
explicitly held to the contrary. *See, e.g.*, *Cooper Notification*, 2010 WL 5149351, at *4
(noting that the patentee's decision not to seek a preliminary injunction "tells one nothing . . .
about the potential irreparability of any harm from any infringement (if ultimately proven).").

[12]   In the cases cited by Atrium (Atrium Br. at 10), in contrast, all patents-in-suit were subject to
reexamination.  *See Semiconductor Energy*, 2012 WL 7170593, at *2; *Robert Bosch
Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 5:12-CV-3864-EJD, 2012 WL 6020012, at *1
(N.D. Cal. Dec. 3, 2012) ("Less than two months after Plaintiff brought this action,
Defendant filed petitions to reexamine ***each*** of the patents-in-suit.") (emphasis added);
*EchoStar Techs. Corp. v. Tivo, Inc.*, No. 5:05 CV 81 DF, 2006 WL 2501494, at *1 (E.D.
Tex. July 14, 2006) (reexamination covered "***all*** asserted claims of the three patents-in-suit")
(emphasis added).

weighs slightly against granting the stay."); *Biomet Biologics, LLC v. Bio Rich Med., Inc.*, No.

SACV 10-1582, 2011 WL 4448972, at *3 (C.D. Cal. Sept. 26, 2011) (denying stay where not all

patents-in-suit were being reexamined); *In re Phoenix Licensing LLC, Pat. Litig.*, No 08-1910-

MHM, 2009 WL 464993, at *3 (D. Ariz. Feb. 24, 2009) (same).

    Atrium asserts that a stay is nevertheless warranted because the '420 patent "involves

technology, features, documents, and witnesses that overlap those of the two patents for which

Atrium has petitioned for *inter partes* review." (Atrium Br. at 1; *see also id.* at 4.)  By law,

however, each claim of each patent-in-suit covers a separate and distinct invention, and its

validity must be assessed independently. *See* 35 U.S.C. § 112; *Honeywell Int'l Inc. v. Hamilton*

*Sundstrand Corp.*, 370 F.3d 1131, 1148–49 (Fed. Cir. 2004) ("Each claim defines a separate

invention, whether or not written in independent form; and its validity stands or falls

separately . . . .").  And the '420 patent in fact claims different technology, covers different

patented Davol products, and is asserted against different accused Atrium products, than the '334

and '905 patents. (*See* Section II.A, *supra*.)  The '420 patent bears no familial relationship, and

has no overlapping inventors, with the '334 and '905 patents. (*See* Lasky Decl. Exs. A, B & C.)[13]

Moreover, Atrium does not identify a single overlapping document or witness.  Because IPR will

not resolve any issues to be tried regarding the '420 patent, a stay is disfavored.  At the very

least, there is no justification for a stay of the litigation regarding the '420 patent.

    Furthermore, there is no basis to conclude that Atrium's IPR petitions will result in

simplification of the litigation regarding the '334 and '905 patents either.  Atrium asserts that a

stay will certainly result in simplification of this action because its IPR petitions "have

---

[13]   In *Alloc, Inc. v. Unilin Décor N.V.*, in contrast, the patent-in-suit not subject to reexamination
was a continuation of a patent that was subject to reexamination. No. 03-253-GMS, 2003 WL
21640372, at *2 (D. Del. July 11, 2003).

substantial merit, bringing to the attention of the PTO several prior art references that the PTO

had not previously considered in evaluating the claims of the '334 and '905 patents." (Atrium Br.

at 1.)  But Atrium readily admits that most of the prior art references applied in its petitions were

previously considered by the PTO during the original patent prosecutions. (*Id.* at 3.)  And at least

one of the other references applied against both patents is cumulative of family members

previously considered by the PTO. (*See* Section II.D, *supra*.)  There is thus good reason to

predict that the PTO will deny Atrium's petitions or that, if granted, the PTO's review will not

result in cancellation or amendment of *any* claim.  At best for Atrium, the prospect that its

petitions will lead to *any* simplification of this litigation is entirely speculative. *See, e.g.*, *Power*

*Integrations v. Fairchild Semiconductor Int'l, Inc.*, No. 08-309-JJF-LPS, 2008 WL 5335400, at

*2 (D. Del. Dec. 19, 2008) ("No one can predict the outcome or the timing of these

proceedings.").[14]  Furthermore, there are numerous issues to be tried regarding the '334 and '905

patents that *cannot* be addressed by Atrium's IPR petitions, including infringement, damages,

validity under 35 U.S.C. § 112, and Atrium's equitable defenses. (*See, e.g.*, D.I. 12 at 5-8.)[15]

       In sum, because the prospect of simplification of the litigation by Atrium's IPR petitions

---

[14]  Acknowledging the speculative nature of predicting the outcome of IPR proceedings, this Court in *Nestle Oil* nevertheless found it likely that some or all claims of the patent-in-suit would be cancelled based in part on: (1) the "plausible argument" that the reasoning underlying the PTO's cancellation of a related patent would also apply to the patent-in-suit; and (2) the PTO's adoption of all of the defendant's proposed rejection grounds. 2013 WL 424754, at *5.  No similar facts are present here.

[15]  To the extent that any parallels might exist between this case and *In re Translogic Tech., Inc.*, 504 F.3d 1249 (Fed. Cir. 2007) (*see* Atrium Br. at 13 n.3), such parallels would exist in *every* case in which PTO review is initiated.  But the caselaw is clear that stays are *not* granted as of right, and indeed should not be granted absent a showing that the relevant factors favor a stay. *See, e.g.*, *ImageVision.Net*, 2013 WL 663535, at *3.  Moreover, any comparison between this case and the *Translogic Technology* case is particularly speculative at this stage, given that the PTO has not even yet granted Atrium's petitions.

is speculative at best, and those petitions necessarily will not resolve many issues to be tried in the litigation, including infringement and validity of the '420 patent, the simplification factor does not favor a stay. *See ImageVision.Net*, 2012 WL 5599338, at \*5 (finding the simplification factor "weighs lightly" and "is insufficient to overcome the prejudice consideration.").

      **D.**    **The Early Stage Of This Litigation Does Not Favor A Stay.**

      Finally, Atrium relies heavily on the fact that this case is in its early stages, having not progressed beyond the pleading stage. (Atrium Br. at 5, 14-15.)  Absent Atrium's gamesmanship in the parties' settlement negotiations, however, this action would be much further advanced. *See Esco*, 2009 WL 3078463, at \*4; *cf. Biomet Biologics*, 2011 WL 4448972, at \*2 ("Here, Defendants' argument that the case is still in its early stages is significantly diminished by the fact that Defendants themselves have caused substantial delays in the progress of this case.").  In any event, given the harm to Davol that would result from a stay, and the fact that IPR likely will not lead to much, if any, simplification of the litigation, the early stage of the litigation cannot overcome the other factors that weigh strongly against a stay. *See, e.g.*, *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 178 (S.D.N.Y. 2009) ("Even where a case is in its early stages of litigation, a stay should still be denied if it offers limited potential to narrow the issues in the case and the non-moving party will suffer undue prejudice by the delay.").[16]

**V.**    **CONCLUSION**

      For the foregoing reasons, Atrium's motion to stay should be denied.

---

[16]  In *Auto Techs. Int'l, Inc. v. Am. Honda Motor Co.*, this Court maintained a stay pending reexamination because "the fact that [the patentee] does not make or sell any product remains unchanged" and "there is no issue of irreparable harm caused by continuation of a stay." No. 06-187-GMS, 2009 WL 2969566, at \*2 (D. Del. Sept. 15, 2009).  Nor could the plaintiff in *Pegasus Dev. Corp. v. DirecTV, Inc.* identify any irreparable harm from a stay. No. Civ. A. 00-1020-GMS, 2003 WL 21105073, at \*2 (D. Del. May 14, 2003). Here, in contrast, the parties are direct competitors, and a stay will unduly prejudice Davol, as discussed above.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paul Saindon*
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com

*Attorneys for Plaintiff Davol, Inc.*

OF COUNSEL

Steven C. Cherny
Benjamin A. Lasky
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

April 4, 2013

7099881