**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DAVOL, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **C.A. No. 12-958-GMS** |
| **ATRIUM MEDICAL CORPORATION,** | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW OF TWO OF THE THREE PATENTS-IN-SUIT**


OF COUNSEL:

Wayne L. Stoner
Gregory P. Teran
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
wayne.stoner@wilmerhale.com
greogory.teran@wilmerhale.com

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Travis S. Hunter (#5350)
One Rodney Square
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
hunter@rlf.com

*Attorneys for Defendant Atrium Medical Corporation*


Dated: April 15, 2013

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 3

A. Davol's Own Actions and Statements Show That a Stay Will Not Prejudice Davol. .......... 3

1. Davol Has Delayed Asserting Its Patents for Years. .......... 3

2. Davol's Interactions With Atrium, Misstated in Davol's Opposition, Show No Prejudice to Davol From a Stay .......... 4

3. Davol's Own Submissions Show No Prejudice to Davol From a Stay .......... 5

B. Davol Ignores the Efficiencies to the Court Achievable by Staying This Case .......... 6

1. A Stay Would Avoid Piecemeal Litigation. .......... 6

2. Davol's '420 Patent Is Not "Separate and Distinct," but Instead Is Clearly Related to the Technology of Davol's '334 and '905 Patents .......... 7

3. Davol Makes Unfounded Assumptions about Atrium's IPR Petitions .......... 8

C. The Early Stage of This Case Makes a Stay Appropriate .......... 9

1. Several Courts Have Stayed Early-Stage Litigation Pending IPR .......... 9

2. This Case Is In Its Earliest Stage .......... 10

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
No. 05-590-GMS, 2006 WL 2375035 (D. Del. Aug. 16, 2006). .....5

*Capriola Corp. v. Larose Indus., LLC*,
No. 12-cv-2346, Dkt. 49, Order at (M.D. Fla. Mar. 11, 2013) .....5, 9, 10

*Helicos Biosciences Corp. v. Pac. Biosciences of Cal.*,
No. 10-735-SLR, 2011 WL 6299761 (D. Del. Dec. 16, 2011).....10

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
No. 12-054-GMS-MPT, 2012 WL 3866677 (D. Del. Sept. 4, 2012).....10

*Inteplast Grp., Ltd. v. Coroplast, Inc.*,
No. 4:08-CV-1413 CAS, 2009 WL 1774313 (E.D. Mo. June 23, 2009) .....5

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
No. 12-662-GMS, 2013 WL 424754 (D. Del. Jan. 31, 2013) .....6

*SenoRx, Inc. v. Hologic, Inc.*,
No. 12–173–LPS–CJB, 2013 WL 144255 (D. Del. Jan. 11, 2013).....6

*Softview LLC v. Apple Inc.*,
No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012).....10

*Star Envirotech, Inc. v. Redline Detection, LLC*,
No. 12-cv-01861, Dkt. 31, Order (C.D. Cal. Apr. 3, 2013).....5, 10

**STATUTES, REGULATIONS & RULES**

35 U.S.C. § 311(b).....9

35 U.S.C. § 314(a) .....3, 8

35 U.S.C. § 315(e)(2).....9

35 U.S.C. § 317.....2

Fed. R. Civ. P. 26(f).....10

Fed. R. Evid. 408 .....2

## INTRODUCTION

Davol's own actions and submissions show that it will not be unfairly prejudiced by a stay pending *inter partes* review ("IPR"). Davol delayed for years before even notifying Atrium of its patents, much less taking action to enforce them. Even after it filed suit, it voluntarily delayed again, failing to serve its complaint for over six months. Even now, the most Davol can say it has been "harmed" by Atrium is that its market share, which remains around 70%, has allegedly declined less than 2% over the past few years. (D.I. 19 (Whitehead Decl.) ¶ 14; Whitehead Decl.'s Ex. L.) Given its own actions and submissions, Davol can certainly afford to wait the statutory 1 1/2 years to have the validity of two of its patents evaluated by the PTO according to the procedure specifically enacted by Congress for that purpose.

Lacking any showing of unfair prejudice, Davol instead resorts to unfounded accusations that Atrium "secretly" engaged in "gamesmanship" by filing petitions for *inter partes* review. (D.I. 18 (Davol Br.) at 1.) These accusations are incorrect and belied by the undisputed record of written communication between the parties, which Davol failed to provide to the Court. The undisputed written record shows that Davol and Atrium repeatedly negotiated Atrium's right to challenge Davol's patents in December 2012, January 2013, and February 2013—long before Davol served its complaint. Indeed, Davol's own President, who participated in the discussions with Atrium from the beginning yet filed no declaration in support of Davol's Opposition, asked Atrium to agree that *"[a]ny challenge to Davol's U.S. patents must be through the patent office through the IPR process, not the courts."* (*See* Ex. I (E-mail from Groetelaars to Karwoski (Feb. 14, 2013)) (emphasis added).) [1]

---

[1] Exhibits A-J referenced herein are attached to the Declaration of Theodore Karwoski, filed contemporaneously herewith. Atrium files these written communications for the sole purpose of rebutting Davol's factual assertions in its Opposition concerning the parties' course of communications and Davol's alleged lack of notice. Atrium does not waive the protections of

Davol repeatedly misstates the facts and the law in its Opposition. On the facts, Davol represents that Atrium "never" informed Davol that Atrium was preparing IPR petitions, despite (among other things) a January 2013 e-mail to Davol from Atrium expressly discussing the implications of any IPR challenge. (*Compare* D.I. 20 (Hoover Decl.) at ¶ 8 *with* Ex. H (E-mail from Karwoski to Hoover (Jan. 22, 2013)). Davol also asserts that its '420 patent has "separate and distinct technology" from the '334 and '905 patents that Atrium has challenged in IPR (Davol Br. at 7), despite admitting that Davol's products relating to all three patents are all implantable hernia patches with polypropylene mesh and barrier layers—which the Court will need to address in any event (Davol Br. at 3). Davol never addresses or even acknowledges the inefficiency ***to the Court*** of addressing this case—let alone the related *Davol* v. *Ethicon* case before the Court on the same '334 and '905 patents (C.A. No. 12-959-GMS)—in piecemeal fashion by litigating the '420 patent first and the '334 and '905 patents later (assuming, as Davol does, that they are not invalidated by IPR). It makes little sense to proceed as Davol suggests under any circumstances, and much less so given the well-publicized budgetary exigencies currently facing many federal courts.

On the law, Davol confuses IPR with IPX (the old *inter partes* reexamination procedure), suggesting that filing IPR petitions necessarily "derail[s]" settlement negotiations. (Davol Br. at 16.) This is not true: although IPX requests could not readily be settled once filed, IPR petitions can easily be settled. *See* 35 U.S.C. § 317. Indeed, Davol could settle it now on reasonable terms. Davol also asserts that it is "speculative at best" that a granted IPR petition will cancel or amend the challenged patent claims (Davol Br. at 1, 20), which overlooks that the standard for granting an IPR petition is "a reasonable likelihood that the petitioner would prevail with respect

---

Federal Rule of Evidence 408, nor does it assent or waive objection to the admissibility of these or any other compromise communications in evidence.

to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). As discussed below, these and other factors favor staying this case pending IPR.

## ARGUMENT

### A. Davol's Own Actions and Statements Show That a Stay Will Not Prejudice Davol.

#### 1. Davol Has Delayed Asserting Its Patents for Years.

Davol cannot show that it would be unduly prejudiced by a stay, because Davol has voluntarily delayed enforcing its patents for years. Atrium launched its accused C-QUR V-Patch™ products in 2008, while Davol's '334 patent was in prosecution. (*See* Karwoski Decl. ¶ 2.) Davol's '334 patent issued on August 31, 2010.[2] Nonetheless, Davol never complained to Atrium about any infringement, never sent notice of its patent or any concerns, and did not sue for nearly two years (until July 20, 2012). In the interim, Davol's '905 patent also issued (on October 5, 2010), and again Davol said nothing about any patent or infringement to Atrium for more than one and a half years. Davol's suggestion that an eighteen-month "delay" from an IPR proceeding could be prejudicial (even less if, as Davol asserts, Atrium's IPR petitions were not granted) is belied by Davol's own delay in asserting its patent rights for an even longer period.

Even when it eventually sued Atrium on July 20, 2012, Davol did not press to assert its patent rights. It did not even serve the complaint. Instead, it sought a "settlement" to try to hold up Atrium for exorbitant amounts of money in a license agreement. Davol used this same tactic against Ethicon—filing suit at the same time and on the same '334 and '905 patents at issue here—and as of the date of this filing, Davol still has not even served that complaint. (*See* Docket for C.A. 12-959-GMS).

---

[2] The parent of the '334 and '905 patents, U.S. Patent No.7,101,381, issued on September 5, 2006 with additional limitations (not present in the '334 and '905 patents) made during prosecution that were critical to its eventual issuance as a patent. Davol never suggested that Atrium infringed this '381 patent, and it is not asserted here.

**2. Davol's Interactions With Atrium, Misstated in Davol's Opposition, Show No Prejudice to Davol From a Stay.**

Contrary to Davol's inaccurate and inappropriate discussion of the parties' settlement discussions, Atrium never "solicited" delay. (Davol Br. at 1, 9, 15.) To the contrary, Atrium engaged in discussions in good faith and, when the parties could not reach agreement, assented to Davol's repeated requests to the Court to extend the time to serve Davol's complaint.

Davol's suggestion that Atrium made "no effort" to challenge Davol's patents during settlement negotiations is unfounded. (Davol Br. at 15.) Atrium told Davol repeatedly that Atrium intended to preserve its right to challenge Davol's patents' validity. Indeed, Atrium even publicly filed an opposition to the European counterpart to Davol's '334 patent in November 2012. (*See* Karwoski Decl. ¶¶ 13–17) Atrium made clear to Davol that Atrium "consider[s] the ability to challenge [Davol's patents] paramount to the license and settlement agreements." (Ex. F (E-mail from Karwoski to Hoover (Jan. 17, 2013)); *see* Karwoski Decl. ¶ 20.)[3]

Davol's counsel's suggestion that Davol was unaware of Atrium's intent to initiate IPR proceedings until after Davol served its complaint is simply baffling, given the undisputed record of communication between the parties. To the contrary, IPR proceedings were repeatedly discussed. In fact, Davol's President himself even asked Atrium to agree that any challenge to Davol's patents "must be through the patent office through the IPR process, not the courts." (Ex. I (E-mail Groetelaars to Karwoski (Feb. 14, 2013)); *see* Karwoski Decl. ¶ 24.)

In any case, Davol's inaccurate Hoover Declaration and the opposition arguments based on it show no prejudice to Davol from a stay. All Davol wants is money. Courts frequently have held that a primarily monetary interest such as Davol's—evident from Davol's willingness to

[3] Because of certain business-confidential information contained in the draft settlement and license agreements, Atrium has not filed unredacted copies publicly. Atrium will provide to the Court copies of the parties' draft settlement and license agreements under seal upon request.

delay assertion of its patents and to license the patents-in-suit—does not defeat the interests of judicial economy or the need to avoid waste of the Court's and parties' resources. (D.I. 16 (Atrium Br.) at 8-9); *see, e.g.*, *Inteplast Grp., Ltd. v. Coroplast, Inc.*, No. 4:08-CV-1413 CAS, 2009 WL 1774313, at *2 (E.D. Mo. June 23, 2009) (granting motion to stay and finding license offer showed plaintiff was "willing to forgo its patent rights for monetary compensation").

**3. Davol's Own Submissions Show No Prejudice to Davol From a Stay.**

Davol's delay, inaction, and willingness to settle for money show that its purported concern about market share, sales, and any exclusionary rights under its patents is not great and provides insufficient grounds to avoid a stay. In its Whitehead Declaration and related Opposition sections, Davol "sets forth no argument that it would be any more prejudiced than any other plaintiff whose patent infringement claim is stayed pending IPR." *Star Envirotech, Inc. v. Redline Detection, LLC*, No. 12-cv-01861, Dkt. 31, Order at 3 (C.D. Cal. Apr. 3, 2013) (granting stay pending IPR in case also involving unfair competition claims) (Ex. K); *see Capriola Corp. v. Larose Indus., LLC*, No. 12-cv-2346, Dkt. 49, Order at 2, 6 (M.D. Fla. Mar. 11, 2013) (granting stay pending IPR in case between "direct competitors") (Ex. L).[4]

Despite asserting that Atrium is a "direct competitor" that allegedly is taking sales and market share from Davol (albeit only less than 2% (Whitehead Decl. ¶ 14)), as discussed in Atrium's opening brief (Atrium Br. at 9), courts have routinely granted stays in cases between competitors. *See, e.g. Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 05-590-GMS, 2006 WL 2375035, at *6 (D. Del. Aug. 16, 2006). Furthermore, Davol's own numbers show the Davol remains the Goliath in the market. According to Davol, it made over $42 million in relevant sales in 2012, two years after Atrium introduced its C-QUR V-Patch™, and its market share was

[4] Exhibits K–M referenced herein are attached to the Declaration of Gregory Teran, also filed contemporaneously herewith.

about seven times larger than Atrium's (which made less than $6 million in sales), and more than three times that of Ethicon. (*See* Whitehead Decl.'s Ex. L.)

Davol's claims of prejudice are further weakened by Davol's identification of multiple competitors in this market—not just Atrium, but also Ethicon. (Davol Br. at 6 n.3.) While some courts have declined to stay cases involving only two market competitors, *see SenoRx, Inc. v. Hologic, Inc.*, No. 12–173–LPS–CJB, 2013 WL 144255, at *8 (D. Del. Jan. 11, 2013) (Davol Br. at 13), Davol admits that the relevant market here has at least three competitors. The same cases Davol cites in its brief recognize that stays pending PTO proceedings are especially appropriate "when there are a number of active firms in the relevant market." *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662-GMS, 2013 WL 424754, at *3 (D. Del. Jan. 31, 2013) (granting stay pending IPX) (Davol Br. at 12). Not only did Davol identify both Atrium and Ethicon as competitors, but Davol sued both Atrium and Ethicon on the '334 and '905 patents.

**B. Davol Ignores the Efficiencies to the Court Achievable by Staying This Case.**

**1. A Stay Would Avoid Piecemeal Litigation.**

As explained in Atrium's opening brief, a stay would avoid duplicating the efforts of the Court, parties, and jury in addressing issues that would be the same in both a trial of the '420 patent and a trial of the '334 and '905 patents. (Atrium Br. at 1, 4.) Because all three patents relate to implantable hernia patch technology, the Court and the jury would waste substantial resources addressing in two separate *Markman* proceedings and trials the issues that the patents otherwise would have in common. All three patents include the claim terms "defect," "implantable prosthesis," "barrier layer," and "mesh layer." A stay would prevent losing the efficiencies of addressing only once the claim terms, technology, features, documents, and witnesses relating to the '420 patent that overlap those of the '334 and '905 patents.

Aside from merely repeating "hardship or inequity" (Davol Br. 1, 9, 10, 13, 14), Davol fails to address the unnecessary burden to all parties and the Court resulting from not staying the '420 patent. Davol never addresses or even acknowledges the inefficiencies ***to the Court*** that would result from addressing this case—much less the related *Ethicon* case—in piecemeal fashion by litigating the '420 patent first and the '334 and '905 patents later (assuming they are not invalidated in the IPR). Doing so would waste judicial resources for no good reason, because the '334 and '905 patents are far more central to the parties' dispute than the '420 patent. To date, the Atrium C-QUR V-Patch™ products Davol has accused of infringing the '334 and '905 patents have sales that are nearly six times greater than sales of Atrium's C-QUR TacShield™ products accused under the '420 patent. (*See* Karwoski Decl. ¶ 3.) Furthermore, Davol's claim of infringement under the '420 patent is particularly dubious, given statements made by Davol during prosecution that exclude coverage of the very technology Davol now apparently accuses.

**2. Davol's '420 Patent Is Not "Separate and Distinct," but Instead Is Clearly Related to the Technology of Davol's '334 and '905 Patents.**

Davol argues that the absence of an IPR challenge to the '420 patent counsels against a stay, and asserts that the '420 patent involves "separate and distinct technology" (Davol Br. at 7). This is not so. Davol contradicts these contentions by asserting that its products relating to its '420 patent, like those relating to its '334 and '905 patents, include "a polypropylene mesh layer on the hernia side to provide for tissue ingrowth, and a barrier layer on the opposite side to minimize unwanted adhesion to internal organs." (Davol Br. at 2, 3.) Indeed, Davol asserts that the same Davol hernia patch embodies all three of its patents, with the '334 and '905 patent patch having "straps" and the '420 patent patch a "positioning pocket." (Davol Br. at 3.)

Davol's '420 patent, while not formally related to the two other patents-in-suit and of course having different claims, also describes and claims hernia patch technology, just as the

'334 and '905 patents do. The Court and the jury will need to learn and address this technology to decide the claims and defenses concerning these patents. Under Davol's proposal, the Court and *two* juries would need to learn this same technology. Without staying the '420 patent as well as the '334 and '905 patents, the Court and the parties could be required to litigate substantially similar technologies twice, brief and argue claim construction for technologically related patents twice (claim terms common to all three patents include "mesh layer," "barrier layer," "defect," and "implantable prosthesis"), and lose all of the efficiencies that would result from conducting fact and expert discovery, dispositive motion practice, and trial on the '420 patent and any asserted '334 and '905 claims that survive IPR together as a group.

**3. Davol Makes Unfounded Assumptions about Atrium's IPR Petitions.**

Although Davol asserts that it is "speculative" that the PTO will cancel or amend any of the 212 patent claims now being challenged in Atrium's IPR petitions (Davol Br. at 1, 9, 19), Davol's position is difficult to reconcile with the undisputed fact that the PTO to date has at least partially granted 88% percent of the *inter partes* review petitions that it has reviewed on the merits: as of April 12, 2013, the PTO had reviewed 42 petitions on the merits, granting IPR for all challenged claims in 32 cases, granting review of at least some challenged claims in 5 cases, and denying only 5 petitions. (*See* Ex. M.) By statute, in granting these IPRs, the PTO found "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition," which is an even higher standard than the previous IPX standard. 35 U.S.C. § 314(a). An IPR is thus reasonably likely to cancel or amend the challenged claims.

Davol provides no reason to suggest that Atrium's IPR petitions would not conform to this trend. Instead, Davol suggests that Atrium's IPR petitions are somehow less likely to be granted because—as legally permitted—they include discussion of some prior art cited during

prosecution (as well as new and different prior art). (Davol Br. at 1, 8, 19.) In fact, some of the art relied upon in the IPR petitions includes Davol's own submissions to the FDA that are nearly identical to Davol's claimed embodiments except for a strap, which is disclosed in other hernia repair prior art. Davol cites no statistics or other authority indicating that an IPR is less likely to result in the cancelling or amending of claims merely because one or more of the references advanced in the IPR was previously of record during prosecution. And, in any case, Atrium's IPR petitions present four new pieces of prior art that the PTO had not previously considered, either alone or in combination with the prior art of record during prosecution. (Atrium Br. at 12.) Davol does not even attempt to rebut the compelling evidence of invalidity based on the prior art references and combinations described in Atrium's IPR petitions.

A stay will avoid wasting resources on litigating cancelled, amended, or clarified claims. Given the strength of Atrium's IPR petitions, it is likely that IPR will simplify this case by cancelling or amending claims. Atrium submitted over 350 pages of argument in its IPR petitions, challenging all claims of the '334 and '905 patents. Even in the unlikely event that all 212 of Davol's pending patent claims survive IPR intact, litigation would be streamlined because Atrium would be estopped from asserting invalidity on grounds that it raised or reasonably could have raised during IPR. 35 U.S.C. §§ 311(b), 315(e)(2); (Atrium Br. at 3.) As Atrium described in its opening brief, it would be a hardship to Atrium and to the Court to litigate patent claims that will be cancelled or amended by the PTO in IPR proceedings. (Atrium Br. 12-13 & n.3.)

**C. The Early Stage of This Case Makes a Stay Appropriate.**

**1. Several Courts Have Stayed Early-Stage Litigation Pending IPR.**

Additional courts have stayed litigation pending *inter partes* review, especially in the litigation's earliest stages. In *Capriola Corp.*, a case between "direct competitors," the court

granted a stay pending IPR when the case was "in the incipient stage," before the PTO had decided to grant the IPR petitions and after discovery had begun. *See Capriola Corp.*, Order at 2, 5 (Ex. L). And in *Star Envirotech*, a case also involving claims of unfair competition, the court granted a stay pending IPR when the motion to stay was filed four months after the complaint, several weeks after the IPR petition, and shortly after the Rule 26(f) scheduling conference. *See Star Envirotech, Inc.*, Order at 1-2 (Ex. K). Atrium discussed additional stays pending IPR in its opening brief. (Atrium Br. at 13-14.)

**2. This Case Is In Its Earliest Stage.**

This litigation is in its earliest stage—the Court has not yet issued a notice of scheduling conference, the parties have not yet had their Rule 26(f) conference, no initial disclosures have been exchanged, no discovery requests have been served, and no trial date has been set. Davol's reliance on cases involving much farther advanced litigation is misplaced. *See ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS-MPT, 2012 WL 3866677, at *4 & n.68 (D. Del. Sept. 4, 2012) (denying stay pending IPX filed on the "eve of discovery") (Davol Br. at 13-14); *Softview LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL 3061027, at *4 (D. Del. July 26, 2012) (denying stay pending IPX due to the "substantial resources already incurred by both the parties and the Court" in the "scheduling and the resolution of discovery disputes, as well as Defendants' motions to sever, stay, and dismiss") (Davol Br. at 16); *Helicos Biosciences Corp. v. Pac. Biosciences of Cal.*, No. 10-735-SLR, 2011 WL 6299761, at *3 (D. Del. Dec. 16, 2011) (denying stay pending IPX when "[d]iscovery is nearing completion") (Davol Br. at 14).

**CONCLUSION**

Atrium therefore respectfully requests that the Court stay this action pending the final resolution of the *inter partes* review of the '334 and '905 patents including all appeals.

*/s/ Travis S. Hunter*
Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Travis S. Hunter (#5350)
One Rodney Square
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
hunter@rlf.com

*Attorneys for Defendant Atrium Medical Corporation*

OF COUNSEL:

Wayne L. Stoner
Gregory P. Teran
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000
wayne.stoner@wilmerhale.com
gregory.teran@wilmerhale.com

Dated: April 15, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2013, I caused to be served by **hand delivery and electronic mail** copies of the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Jack B. Blumenfeld
Paul Saindon
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com

I further certify that on April 15, 2013, I caused to be served by **electronic mail** copies of the foregoing document upon the following counsel of record:

Steven C. Cherny
Benjamin A. Lasky
Kirkland & Ellis LLP
601 Lexington A venue
New York, NY 10022
(212) 446-4800
steven.cherny@kirkland.com
benjamin.lasky@kirkland.com

*/s/ Travis S. Hunter*
Travis S. Hunter (#5350)
hunter@rlf.com