IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DAVOL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  12-958-GMS |
| | ) | |
| ATRIUM MEDICAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

### I.    INTRODUCTION

The plaintiff Davol, Inc. ("Davol") filed this patent infringement suit against Atrium Medical Corporation ("Atrium") on July 20, 2012, alleging infringement of U.S. Patent Nos. 7,785,334 (the "'334 Patent"), 7,806,905 (the "'905 Patent"), and 7,824,420 (the "'420 Patent"). (D.I. 1.) Before formal service of the Complaint, the parties attempted to reach a settlement, and, on three occasions, the court approved stipulations to extend the time for service beyond the 120-day period set forth in Rule 4(m) of the Federal Rules of Civil Procedure.  (D.I. 5; D.I. 6; D.I.7.) Davol ultimately served its Complaint on February 19, 2013.  (D.I. 8.)

On March 13 and March 14, 2013, Atrium filed six petitions for *inter partes* review of the '334 and '905 Patents with the Patent and Trademark Office (the "PTO"). (D.I. 16 at 2.)  On March 18, 2013, Atrium filed the present Motion to Stay Litigation Pending *Inter Partes* Review of the '334 and '905 Patents.  (D.I. 15.) The PTO has not yet granted the petitions for review. (D.I. 16 at 3.)  For the reasons that follow, the court will deny Atrium's Motion to Stay.

## II.    BACKGROUND

The '334 and '905 Patents were issued to C.R. Bard, Inc. ("Bard")—the parent company

of Davol—on August 31, 2010 and October 5, 2010, respectively and were assigned to Davol on

July 12, 2012. (D.I. 18 at 3.) The '334 and '905 Patents relate to implamnatable hernia patches

and the treatment of tissue or muscle defects using such patches. (*Id.*) Davol alleges that Atrium

sells a competing hernia repair product that infringes these patents.[1] (D.I. 1 at ¶ 4; D.I. 18 at 4–

5.)

## III.    STANDARD OF REVIEW

The decision of whether to grant a stay rests within the sound discretion of the court as a

product of its inherent power to manage its own docket so as to conserve judicial resources. *See*

*Cost Bros. Inc. v. Travelers Indemnity Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *First Am. Title Ins.*

*Co. v. MacLaren L.L.C.,* No. 10-363-GMS, 2012 WL 769601, at *6 (D. Del. Mar. 9, 2012). It is

well settled that this authority extends to patent cases in which a review or reexamination by the

PTO has been requested. *Ethicon, Inc. v. Quigg,* 849 F. 2d 1422, 1426-27 (Fed. Cir. 1988);

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS-MPT, 2013 WL 663535

at *1 (D. Del. Feb, 2013), *recommendation adopted,* 2013 WL 1743854; *Abbott Diabetes Care,*

*Inc. v. Dexcom, Inc.*, No. 06-513-GMS, 2007 WL 2892707, at *4 (D. Del. Sept, 2007). The

court looks to the following factors in assessing the propriety of a stay: "(1) whether a stay

would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2)

whether a stay will simplify the issues in question and trial of the case; and (3) whether

---

[1] Davol is also the owner of the '420 Patent, which was issued to Bard on November 2, 2010 and assigned
to Davol on July 12, 2012. (D.I. 18 at 4.) Atrium has not sought an *inter partes* review of the '420 Patent.

discovery is complete and whether a trial date has been set." *First Am. Title Ins. Co.*, 2012 WL 769601, at *4.

## IV. DISCUSSION

The court finds that, taken together, the three stay factors noted above weigh against Atrium's Motion to Stay. The court will discuss each factor in turn.

### A. Undue Prejudice

The first issue the court must address is whether a stay would place the non-moving party at a clear tactical disadvantage or cause it to suffer undue prejudice. *See First Am. Title Ins. Co.*, 2012 WL 769601, at *4. Of course, staying any case pending PTO review risks delaying the final resolution of the dispute and may result in some degree of prejudice to the plaintiff. *See Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662-GMS, 2013 WL 424754, at *2 (D. Del. Jan. 31, 2013); *Textron Innovations, Inc. v. Toro Co.*, No. 05-486-GMS, 2007 WL 7772169, at *2 (D. Del. Apr. 25, 2007). Such an inherent risk of delay, however, is not dispositive with regard to this factor. *See Neste Oil Oyj*, 2013 WL 424754, at *2 ("The court also recognizes . . . that the potential for delay does not, by itself, establish *undue* prejudice."). Rather, the court looks to the following four sub-factors to determine whether the non-moving party would be unacceptably prejudiced if a stay is granted: (1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *ImageVision.Net, Inc.*, 2013 WL 663535, at *5; *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011); *Ever Win Int'l Corp. v. Radioshack Corp.*, No. 11-1104-GMS-CJB, 2012 WL 4801890, at *5 (D. Del. Oct 9, 2012).

#### 1. Timing of the review and stay requests

Here, Davol filed its Complaint on July 20, 2012 but did not formally serve it on Atrium until February 19, 2013.   Atrium filed its requests for *inter partes* review of the '334 and '905 Patents on March 13 and 14, 2013, less than one month after Davol served its Complaint and just one day after filing its Answer and Counterclaims.  (D.I. 16 at 2.)  Davol then filed the present Motion to Stay on March 18, 2013. (D.I. 15.)

Given the promptness of Atrium's filings, the timing of the review petitions and stay request present little evidence that the defendant sought an unfair tactical advantage.  *See ImageVision.Net*, 2013 WL 663535, at *5 ("[T]he less time that a party waits to file a motion to stay pending reexamination, the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical.").   Davol suggests that Atrium engaged in improper gamesmanship by delaying the litigation under the guise of settlement negotiations while "secretly" preparing *inter partes* review petitions.  (D.I. 18 at 1.)  Davol fails, however, to present any meaningful evidence that Atrium approached those negotiations in bad faith. Moreover, Atrium has submitted communications between the parties indicating that, during the negotiations, Davol was aware of the potential for an *inter partes* review challenge.  (D.I. 25 at ¶¶ 22–25, Ex. H, Ex. I.)

### 2.    Status of the review

On the other hand, the status of the *inter partes* review is cause for some concern.  As Davol points out, the PTO proceedings are in their earliest stage and could be expected to last for nearly two years.  (D.I. 18 at 11.)  The PTO has not yet decided whether to grant Atrium's

petitions, and it is reasonable to assume that the process may continue into 2015.[2] (*Id.*) The court

recognizes that such a delay risks unnecessarily impairing Davol's patent rights, and finds that

this sub-factor weighs against granting a stay.[3]

### 3.    Relationship between the parties

Finally, the court considers the relationship between the parties. An important factor in

determining if a stay will prejudice the plaintiff is whether the parties are direct competitors. *See*

*ImageVision.Net*, 2013 WL 663535, at *6; *Mission Abstract Data LLC. v. Beasley Broad, Grp.,*

*Inc.*, No. 11-176-LPS, 2011 WL 5523315, at *4 (D. Del. Nov. 14, 2011); *Boston Scientific*

*Corp.*, 777 F. Supp. 2d 783, 788; *Cooper Notifications, Inc. v. Twitter, Inc.*, No. 09-865-LPS,

2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010); *Textron Innovations, Inc.*, 2007 WL 7772169

at *3.    In such cases, "there is a reasonable chance that delay in adjudicating the alleged

infringement will have outsized consequences to the party asserting infringement has occurred,

including the potential for loss of market share and an erosion of goodwill." *Neste Oil Oyj*, 2013

WL 424754, at *2 (quoting *SenoRx, Inc. v. Hologic, Inc.*, No. 173-LPS-CJB, 2013 WL 144255,

at *5 (D. Del. Jan. 11, 2013)).    There may be less cause for concern, however, when there are

multiple firms in the relevant market. *Id.* at *3; *Air Vent, Inc. v. Owens Corning Corp.*, No. 10-

1699-TFM, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012).

---

[2] Under the new *inter partes* review procedures, the Director of the PTO must decide whether to grant review within six months of a petition being filed, *see* 35 U.S.C. § 314(b); 37 C.F.R. § 42.107, and the PTO must then complete its review and issue a final determination within eighteen months, 35 U.S.C. § 316(a)(11).

[3] In arguing that the early stage of the review proceedings will not result in undue prejudice, Atrium quotes *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-21-JST, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012), for the proposition that "if the PTO decides not to grant [the] *inter partes* review petitions, 'the stay will be relatively short.'" (D.I. 16 at 7.) While the court appreciates the logic of this argument, it provides the non-moving party with little comfort in those cases where the PTO does grant review. In such cases, the fact that the review proceedings are in their infancy forces the non-moving party to wait not only for a PTO decision on the challenged claims but also for the preliminary decision on whether to even hear the challenge.

Here, Davol contends that "[e]ach of Atrium's accused products competes directly with patented products sold by Davol," that "[s]ales of Atrium's accused products already have caused market share loss and price erosion for Davol's own competing products," and that "such harm will continue unless and until Atrium is enjoined." (D.I. 18 at 13–14.) In response to this "direct competitor" argument, Atrium points out that (1) there are multiple active firms in the market, (2) Davol continues to enjoy a significant market share advantage, (3) Davol actually has explored the possibility of licensing the patented technology to Atrium and other alleged competitors, and (4) Davol has failed to seek a preliminary injunction. (D.I. 18 at 8–9; D.I. 24 at 5–6.)

The court believes that Davol has the better argument with respect to this sub-factor. While the presence of multiple firms in the relevant market may lessen the prospect of undue prejudice, Atrium is able to point to only one additional competitor, Ethicon Inc. ("Ethicon").[4] This case thus stands in contrast to *Neste Oil*, in which the court relied, in part, on the large number of firms in the market for biomass-based diesel fuel subsidies to find that the parties were not "direct competitors" for purposes of its stay analysis. 2013 WL 424754 at *3. In the relatively exclusive market at issue here, Davol likely faces a greater risk of surrendering market share. Further, the court does not believe Davol's competition argument is substantially undermined by Atrium's claims that Davol's market share is approximately seven times larger than its own and more than three times larger than Ethicon's. (D.I. 24 at 5–6.) The mere fact

---

[4] On July 20, 2012, Davol filed a related suit in this district against Ethicon, *Davol, Inc. v. Ethicon Inc.*, No. 12-959-GMS, alleging infringement of the '334 and '905 Patents. (No. 12-959, D.I. 1.) The parties in that action apparently have resolved these infringement claims and have filed a Joint Motion to Dismiss. (No. 12-959, D.I. 10.)

that Davol appears to be the dominant player in the present market does little to mitigate the risk

of future prejudice, and Atrium submits no authority to the contrary.[5]

The court also rejects Atrium's position that Davol's willingness to license its patented

technology or otherwise settle this dispute suggests a reduced concern about the parties'

competitive relationship. (D.I. 16 at 8–9.) The court acknowledges that this argument has some

logical appeal, and the Federal Circuit has endorsed similar reasoning in assessing the potential

for irreparable harm in the preliminary injunction context. *See High Tech Med. Instrumentation,*

*Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1556–57 (Fed. Cir. 1995) ("[T]he evidence shows

that [the plaintiff] offered a license to [the defendant], so it is clear that [the plaintiff] is willing

to forgo its patent rights for compensation. That evidence suggests that any injury suffered by

[the plaintiff] would be compensable in damages assessed as part of the final judgment in the

case."). The *High Tech Med Instrumentation* court, however, also relied heavily on the fact that

the plaintiff was a non-practicing entity, extinguishing any risk that it would lose sales or

goodwill in the market. *See id.* That is plainly not the case here, and, while eventual money

damages might be sufficient to compensate Davol for lost sales, the prospect of lost market share

and price erosion inject an added measure of uncertainty into this action.    Absent further

information, the lone fact that Davol has indicated a willingness to license its patented

---

[5] To the extent that Atrium offers these numbers simply to demonstrate that its accused products have not significantly affected Davol's market share to date, the court notes that (1) one of Atrium's accused products has only been available "within the last several years," (D.I. 19 at ¶ 12), and, (2) in addition to loss of market share, Atrium already has suffered some degree of price erosion in attempting to compete with Atrium's lower prices (*Id.* at ¶ 15).

technology does not alleviate the court's concerns on this point—licensing agreements might

guard a patentee's business interests in ways that final damages cannot.[6]

Finally, the fact that Davol has failed to seek a preliminary injunction is not dispositive as

to the "competition" issue. It is, of course, true that "[w]here the question of 'direct competition'

remains unanswered, courts have sometimes considered whether the plaintiff sought a

preliminary injunction." *Neste Oil Oyj*, 2013 WL 424754, at *2 (citing *SenoRx, Inc.*, 2013 WL

144255, at *8; *Ever Win Int'l Corp.*, 2012 WL 4801890, at *7; *Belden Techs., Inc. v. Superior

Essex Commc'ns LP*, No. 08-63-SLR, 2010 WL 3522327, at *3 n.4 (D. Del. Sept. 2, 2010)). In

this case, however, there is little doubt that Atrium's accused products compete directly with

Davol's patches, and the court has little reason to consider whether a preliminary injunction was

sought. While the filing of such a motion may be indicative of prejudice in certain situations,

there are a number of reasons that a plaintiff may choose to forego seeking injunctive relief that

are wholly unrelated to the question of whether the parties are in direct competition. *See, e.g.*,

*Cooper Notifications, Inc.*, 2010 WL 5149351, at *5 (observing that the plaintiff's failure to

move for a preliminary injunction "tells one nothing . . . about the potential irreparability of any

harm from any infringement," given the plaintiff's acknowledgment that it could not meet the

"high burden for such relief" without further discovery).

Taking into consideration each of the sub-factors discussed above, the court finds that the

undue prejudice factor weighs against granting a stay in this action. Davol has sufficiently

demonstrated that it is a direct competitor of Atrium in a limited market. When coupled with the

---

[6] For example, a patentee might impose field of use or geographic restrictions on a licensing agreement aimed at extracting further value from its patent rights while largely preserving its own market position.

early stage of the *inter partes* review process, this relationship suggests that Davol will suffer some degree of undue prejudice should the court stay this matter.

B.      Issue Simplification

The court next considers "whether a stay will simplify the issues in question and trial of the case." *First Am. Title Ins. Co.*, 2012 WL 769601, at *4. Staying an action pending review by the PTO presents various opportunities to narrow the litigation:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the [review] may encourage a settlement without further involvement of the court, (5) the record of the [review] would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375-GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001). Here, Atrium has petitioned for review of all 128 claims of the '334 Patent and all 86 claims of the '905 Patent, and the court agrees with its position that a stay might simplify this action by allowing the PTO to evaluate the relevant prior art and resolve outstanding validity issues. (D.I. 16 at 11.) Additionally, Atrium observes that, by statute, it will be unable to later argue in this action that the challenged "claim[s are] invalid on any ground that [it] raised or reasonably could have raised during . . . *inter partes* review." 35 U.S.C. § 315. Courts have considered such provisions when assessing the potential for issue simplification, since "[e]ven if every claim survives [PTO review] unchanged, [a] case will still be simplified because [the defendant] will be estopped from asserting any invalidity arguments it could have raised." *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 12-3864-EJD, 2012 WL 6020012, at

9

*2 (N.D. Cal. Dec. 3, 2012); *see also Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 12-329-AG, 2013 WL 1876459, at *4 (C.D. Cal. May 2, 2013); *Semiconductor Energy Lab. Co.*, 2012 WL 7170593, at *2; *Wall Corp. v. BondDesk Grp., LLC*, No. 07-844-GMS, 2009 WL 528564, at *1 (D. Del. Feb. 24, 2009) (considering the potential for a similar estoppel provision in the *inter partes* reexamination context to "resolve many of the invalidity issues and streamline the litigation"). Both of these arguments suggest that a stay may serve to simplify the issues before the court.[7]

Nevertheless, the court believes this factor weighs only lightly in Atrium's favor. As Davol points out, "there are numerous issues to be tried regarding the '334 and '905 patents that *cannot* be addressed by Atrium's . . . petitions, including infringement, damages, validity under 35 U.S.C. § 112, and . . . equitable defenses." (D.I. 18 at 19.) Moreover, the court is concerned by Atrium's failure to seek *inter partes* review of the '420 Patent—a stay of this action in its entirety will do little to advance the parties' dispute over the '420 Patent, and allowing litigation to proceed solely with respect to that patent while the parties await a PTO decision on the other two patents-in-suit would invite substantial inefficiency. Given the numerous issues that will remain unresolved even if the PTO does grant review, this factor's weight in the stay analysis is considerably reduced. *See ImageVision.Net, Inc. v. Internet Payment Exchange, Inc.*, No. 12-54-GMS-MPT, 2012 WL 5599338, at *4 (D. Del. Nov. 15, 2012).

C.    Stage of Litigation

---

[7] Davol criticizes Atrium's petitions for asserting prior art already considered by the PTO during prosecution and emphasizes that review has not yet been granted. (D.I. 18 at 19.) On this basis, it characterizes the potential for issue simplification as "entirely speculative." (*Id.*) While the court appreciates Davol's concern, it notes that a motion to stay pending review or reexamination always calls for some degree of speculation on this point. Moreover, the statistics referenced by Atrium indicate that review has been granted in almost all the *inter partes* review petitions considered by the PTO and that, in the old reexamination context, the PTO cancelled or narrowed claims in the vast majority of cases. (D.I. 16 at 11.)

Finally the court looks to the stage of litigation, asking "whether discovery is complete and whether a trial date has been set." *First Am. Title Ins. Co.*, 2012 WL 769601, at *4. Staying a case in its infancy "can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *SenoRx, Inc.*, 2013 WL 144255, at *5 (internal quotation omitted). On the other hand, when a party requests a stay in the later stages of litigation, it is likely that "the Court and the parties have already expended significant resources . . . and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Id.*

This factor weighs in favor of a stay in the present case. This action has not yet moved beyond the pleadings stage—no scheduling conference has occurred or been set, no discovery has taken place, and no trial date has been scheduled. (D.I. 16 at 14.) While Davol attempts to blame the delays in this matter on Atrium's alleged "gamesmanship in the parties' settlement negotiations," the court has already noted the lack of evidence that Atrium approached those discussions in bad faith. (D.I. 18 at 20.) Davol opted to postpone the service of its Complaint and stipulated to the three requests for extension of the time—it cannot now assign sole responsibility for the slow progress of this action to Atrium. (D.I. 5; D.I. 6; D.I.7.)

## V.     CONCLUSION

Taking the three stay factors together, the court believes they weight against a stay of this litigation. While the "issue simplification" and "stage of litigation" factors suggest that a stay might serve the interests of judicial economy, the court is concerned that Davol will suffer undue prejudice should it be forced to continue competing with Atrium's accused products without being permitted to advance its infringement claims. Moreover, any efficiency that might have

11

been realized through a stay would have been limited by the fact that Atrium has sought review

of only two of the three patents-in-suit. For the foregoing reasons, the court will deny Atrium's

Motion to Stay Litigation Pending *Inter Partes* Review of the '334 and '905 Patents (D.I. 15).

Dated: June 17, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVOL, INC., )
)
Plaintiff, )
)
v. )    Civil Action No. 12-958-GMS
)
ATRIUM MEDICAL CORPORATION, )
)
Defendant. )

## ORDER

At Wilmington this 17Th day of June 2013, consistent with the memorandum opinion issued this same date, IT IS HEREBY ORDERED THAT:

The defendant's Motion to Stay Litigation Pending *Inter Partes* Review of the '334 and '905 Patents (D.I. 15) is DENIED.

_____
CHIEF, UNITED STATES DISTRICT JUDGE